DOMENGEAUX, Judge.
Floyd R. McNery brought this action seeking to recover the damages he allegedly sustained when the assets of a corporation in which he contends he owned stock were sold. McNery named as defendants, LOA of Lafayette, Inc., the corporation in which he claims stock ownership, Signs Horizon, Inc., a corporation which prior only to a name change was known as LOA of Lafayette, Inc. and David S. Fitzgerald, Jr., an individual alleged to be the majority and sole remaining shareholder, with the exception of the plaintiff, of Signs Horizon, Inc.
McNery alleged in his petition that he was a twenty-five percent shareholder of LOA of Lafayette. He further alleged that Fitzgerald, acting in the capacity of Secretary-Treasurer of Signs Horizon, sold all of the assets of Signs Horizon to Acadiana Outdoor Advertising, Inc. McNery ultimately maintains that because he was excluded from participating in the proceeds of the sale he was damaged in the following respects: (1) $80,000 for loss of assets and properties; (2) $15,000, for loss of revenues, profits and dividends; and (3) $25,-000, for mental anguish, humiliation and embarrassment.
Signs Horizon and Fitzgerald answered the plaintiffs petition contending that McNery had never been a shareholder of either LOA of Lafayette or Signs Horizon. Signs Horizon then reconvened against McNery alleging that he was indebted unto the corporation, in accordance with the terms of a promissory note, in the amount of $1,550, plus interest and attorney’s fees.
*954 The trial court, concluding that McNery had failed to carry his burden of proof, rendered judgment on the principal demand against the plaintiff and in favor of Signs Horizon. The court, in written reasons, stated that the plaintiff had been unsuccessful in establishing any ownership interest in LOA of Lafayette or Signs Horizon, and that the plaintiff had not shown that the stock of Signs Horizon was of value when the assets of the corporation were sold.
The court then rendered judgment on the reconventional demand in favor of the plaintiff-in-reconvention, Signs Horizon, and against the defendant-in-reconvention, McNery. Signs Horizon was awarded judgment in accordance with its prayer, $1,550, plus interest and attorney’s fees.
This case is before us on an appeal filed by the plaintiff, McNery. McNery contends that the lower court erred in concluding that he had failed to establish his ownership of Signs Horizon and in concluding that the stock of Signs Horizon was valueless when the corporate assets were sold. McNery did not appeal the decision of the lower court addressing the defendant’s re-conventional demand.
As this case is entirely a question of fact, “Did Floyd R. McNery own any stock in Signs Horizon, Inc. and if so, was that stock of value?”, the decision of the trial court will be reviewed according to the standard set forth in Canter v. Koehring Co., 283 So.2d 716 (La.1973), as explained and clarified by Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987). The reasonable evaluations of credibility and the reasonable inferences of fact of the trial court will be given great deference and the decision below will not be reversed absent a finding of manifest error.
The plaintiff’s burden at trial was to prove by a preponderance of the evidence that he had an ownership interest in Signs Horizon, i.e., that he was a shareholder. Meyer v. State, Department of Public Safety, License Control and Driver Improvement Division, 312 So.2d 289 (La.1975). Subsequent to our review of the facts, we do not believe that the plaintiff carried his burden. We, therefore, affirm the decision of the trial court. See, Griffith v. Hasha, 315 So.2d 778 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 205 (La.1975). Cf., Dardeau v. Fontenot, 326 So.2d 521 (La.App. 3rd Cir.1976); Fireplace Shop, Inc. v. Fireplace Shop of Lafayette, Inc., 400 So.2d 702 (La.App. 1st Cir.1981).
McNery maintained at trial that he was the owner of 200 shares of stock of LOA of Lafayette, a corporation which was in the business of selling advertising space on small roadside billboards in the Lafayette area. He testified that when the corporation was organized 1000 shares were authorized, 200 shares were issued to each of four shareholders, one of which was himself, and that 200 shares remained with the corporation. McNery introduced into evidence, in support of his position, two financial statements of LOA of Lafayette. The statements substantiated McNery’s testimony that 800 shares had been issued and were outstanding, however, the statements only evidenced that 800, as opposed to 1000, shares had been authorized.
McNery stated that despite the fact that he was entitled to the stock and had made numerous requests to obtain his certificate, he never received it. The plaintiff, in an effort to substantiate his position, testified that in consideration for his interest in LOA of Lafayette, he provided the corporation with signs, panels, other equipment and lease agreements and that, additionally, he agreed to act as president, thereby, providing the corporation his services and expertise.
The plaintiff’s most convincing evidence was the testimony of Fitzgerald, recorded as a part of appeal proceedings before the Appeals Tribunal of the Louisiana Office of Employment Security. Fitzgerald testified under oath during these proceedings, convened to review McNery’s entitlement to unemployment compensation subsequent to his termination as president of LOA of Lafayette, that “Mr. McNery helped structure the company. He was a stockholder *955 in the company and he had options for stock in the company.”
The defendant-appellant, Signs Horizon, countered the testimony and exhibits of the plaintiff and in the judgment of the trial court and this Court, effectively refuted McNery’s case-in-chief. The defendant established over the testimony of the plaintiff, who was both the incorporator of LOA of Lafayette and its initial president, that not 1000 but, rather, 1100 shares of stock had been authorized. The defendant proved this fact by offering into evidence the articles of incorporation of LOA of Lafayette. Signs Horizon, in its effort to establish the total number of shares which had been issued and to whom those shares had been issued, then introduced into evidence three stock certificates of LOA of Lafayette. Two of these certificates, in the names of David S. Fitzgerald, Jr. and Hamilton Lemoine, were properly executed by the president of LOA of Lafayette, Floyd R. McNery, and the secretary of the corporation, Hamilton Lemoine. These certificates evidenced the fact that Fitzgerald was the owner of 1000 shares and that Lemoine owned 55 shares. The third certificate, this one for 55 shares, dated the same as Fitzgerald and Lemoine’s certificates, was prepared in the name of Floyd R. McNery but, bore the signature of neither McNery nor Lemoine.
Fitzgerald, acknowledging the discrepancy between the financial statements and the articles of incorporation with regard to the total number of authorized shares, explained from the witness stand how the discrepancy could have occured. Fitzgerald testified that his staff, employees neither retained nor compensated by Signs Horizon, was responsible for compiling data and preparing financial statements for about fifteen different business ventures. He stated that the error in the financial statement probably arose when his computer was originally programed with the LOA of Lafayette financial statement. Fitzgerald made special note of the fact that, as was printed on the cover sheets of the statements, they were unaudited financial reports.
Signs Horizon further countered McNery’s allegations with proof that McNery had never paid for his shares. McNery testified that his contribution to LOA of Lafayette, in exchange for his stock, was the services he would provide the corporation as president and the signs, panels and other property he brought with himself to the corporation. Initially it was noted, and correctly so, that pursuant to the dictates of La.R.S. 12:52 (1968) (amended 1974) only “services actually rendered to the corporation,” i.e., past services, are considered adequate consideration.
It was also demonstrated by the defendant that the property McNery provided LOA of Lafayette was not his but, rather, belonged to Louisiana Outdoor Advertising, Inc. Fitzgerald testified that LOA of Lafayette acquired the ownership of the property in question only subsequent to the settlement of a lawsuit which had named both LOA of Lafayette and McNery as defendants. McNery, under cross-examination, admitted that the property was not his personally and that he had been named as a defendant in a lawsuit involving the property. The plaintiff, however, told the court that he had no knowledge of the outcome of the suit.
Fitzgerald did, however, testify that there was an agreement to which McNery was a party, the purpose of which was to enable the plaintiff to become a shareholder. The essence of the agreement was that upon the repayment of a loan extended by LOA of Lafayette to McNery, McNery would receive his stock. This loan, which the plaintiff testified was a personal loan and which the plaintiff acknowledged never having entirely repaid, was the subject of the defendant’s reconventional demand. Judgment for Signs Horizon, the plaintiff-in-reconvention, as previously stated, was not appealed.
The trial court was also appraised that it was Fitzgerald who undertook the greatest risks in the venture. The evidence confirmed that Fitzgerald borrowed $50,000 against a line of credit to start the business and that subsequently, to keep the corporation afloat, he borrowed an additional $80,- *956 000. It was established that, with the exception of Fitzgerald, only Lemoine and another individual, Richard M. Saudefer, who anticipated eventually having an interest in the business, placed themselves in financial jeopardy. Lemoine signed a promissory note to aid in the corporate acquisition of a truck and Sandefer extended a $3,000 loan to the corporation to enable it, on one occasion, to meet its payroll.
McNery was never at financial risk. The evidence, in fact, establishes that he was compensated for all his services. McNery testified that for acting as president and managing the business he was paid a salary of $400 per week. He testified that the corporation’s other employees were only paid approximately $200 per week.
Lastly, Fitzgerald adequately explained the contradiction between his testimony before the trial court that McNery had no interest in LOA of Lafayette and his statement to the Appeals Referee that the plaintiff was a stockholder. Fitzgerald testified that between March, 1982, and January, 1983, the relevant time period, he was involved in eighteen business ventures. He further stated that, prior to McNery’s dismissal as president, he had not taken an active interest in the business. Fitzgerald stated that when he was questioned by the Appeals Referee he was unaware, until questioned, of the area of inquiry and, therefore, did not have any corporate records convenient for review prior to answering. He concluded by stating that he was simply mistaken when he said that McNery was a stockholder.
Having concluded that the plaintiff did not carry his burden of proving that the decision of the trial court, with regard to his first assignment of error, was manifestly erroneous, we need not address the plaintiff’s second assignment of error that the stock of Signs Horizon had value prior to the sale of the corporate assets.
For the above and foregoing reasons, the decision of the district court in favor of the defendant, Signs Horizons, Inc., and against the plaintiff, Floyd R. McNery, is affirmed.
All costs of this appeal are assessed against the plaintiff, Floyd R. McNery.
AFFIRMED.