606 So.2d 881 (1992)
Luckett M. REEVES, Claimant/Plaintiff-Appellant,
v.
REEVES DIRT PIT, et al., Defendants-Appellees.
No. 23947-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
Graves, Graves & Hanna by Robert M. Hanna, Shreveport, for claimant/plaintiff-appellant.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants-appellees.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
In this workers compensation case, claimant Luckett Reeves appeals the hearing officer's Memorandum Opinion and Order sustaining defendants' exception of prescription and dismissing his claim for weekly indemnity benefits, medical costs, statutory penalties and attorney fees. For the reasons expressed, we reverse and remand.

FACTS
Reeves and his wife, Vicki, serve as president and secretary of Reeves Dirt Pit, Inc., a family-owned corporation; they are the company's only two directors. Mrs. Reeves keeps the books, handles the bidding, signs checks and generally manages the business. Until October 1989, Reeves *882 supervised the physical operations of the business.
On the morning of October 26, 1989, Reeves was working with his crew blacktopping a road leading to the dirt pit. About noon, Reeves apparently became overheated and experienced "life threatening ventricular arrhythmias." R. p. 24. He required "major resuscitive efforts" as he was transported by ambulance to the hospital. R. pp. 17-18. He was treated for some days before being released to his home. In addition to the effects of this cardiac dysfunction, which required additional hospitalization in December 1989, Reeves developed a "Parkinsonian tremor" in his right arm, hand and face which has grown progressively worse over time. Reeves's tremors are probably the result of anoxia suffered during the emergency team's efforts to resuscitate him (R. p. 20); at least one physician indicated that some organic brain damage may have resulted from the October incident as well. Reeves has not worked since the incident.
As secretary of the corporation, Mrs. Reeves continued to pay Reeves his full salary from the onset of his illness through May 1990, when she applied for Social Security disability benefits in his behalf.
Mrs. Reeves initially sought payment for her husband's medical expenses through the company's group health insurance carrier. No payments were made by the insurance company before it became insolvent in mid-1990.
In June 1990, Mrs. Reeves asked Don Whitlock, the company's insurance agent, if a workers compensation claim could be filed on behalf of her husband. Whitlock filled out and filed a claim, which was sent to Travelers Ins. Co., Reeves Dirt Pit, Inc.'s compensation carrier. Travelers sent the claim to an adjustment company. On July 10, the company sent Reeves a computer-generated letter informing him that his claim had been received and that Dana Clavin had been assigned to handle it. Ms. Clavin contacted the Reeveses by telephone, verified their address, and told Mrs. Reeves to keep receipts for her husband's medical expenses in case they were found to be reimbursable. Ms. Clavin testified that she told Mrs. Reeves that the claim was "questionable." R. p. 42.
In August, Ms. Clavin contacted Conservco for assistance in determining if Reeves's illness was work-related. Conservco assigned the claim investigation to Disability Case Manager Linda Hunt on August 28, 1990. She met with the Reeveses on September 10. In addition to questions about his medical condition, Ms. Hunt was required to ask about Reeves's sources of income. The referral form from the adjuster had a workers compensation figure already filled in; Mrs. Reeves testified that Ms. Hunt had presumed from this that Reeves was already receiving workers comp benefits, but Ms. Hunt stated she did not remember whether she and Mrs. Reeves discussed the comp benefits or not. R.p. 65. Ms. Hunt testified that at this meeting, and on several occasions thereafter, Mrs. Reeves told her that a lawyer might be necessary to "expedite" settlement of the claim; Ms. Hunt stated she neither discouraged nor encouraged Mrs. Reeves from taking legal action.
According to Ms. Hunt, attempts to get medical records from Reeves's treating physicians took some time, although she testified that both Mr. and Mrs. Reeves cooperated fully. Dr. Richard Shehane, who had treated Reeves in the Emergency Room, sent his report on October 25. On December 7, Ms. Clavin received a report from Dr. Russell Tynes, another of Reeves's treating physicians.
In December, Ms. Hunt was instructed by her supervisors to set up independent medical examinations for Reeves. Dana Clavin received reports from these examinations on January 16 and 28, from Drs. Richard Haynie and Tommy Brown, respectively.
Also in December, Ms. Clavin's supervisors told her to get a legal opinion on the case. She received a letter on January 18, 1991, advising her that Reeves's claim had prescribed. She called Mrs. Reeves on January 21 to tell her that the claim was denied.
*883 Reeves filed a claim with the Office of Workers Compensation on February 6, 1991. Defendants Travelers and Reeves Dirt Pit, Inc. answered, asking that the claim be dismissed since Reeves's claim had prescribed on its face.
At the hearing, held June 25 and 26, Reeves argued that his claim had not prescribed for three reasons: 1) his employer continued to pay him wages in lieu of compensation; 2) he was lulled into inaction by the actions of the claims adjuster; and 3) prescription did not begin to run until he became aware that his injury was medically related to his work. The hearing officer found that none of these defenses tolled the prescriptive period, and dismissed the case in an order signed August 12, 1991. On appeal, Reeves urges the same arguments presented to the hearing officer and claims in a single assignment that the hearing officer erred in sustaining defendants' exception of prescription.

DISCUSSION
La.R.S. 23:1209 provides three different time limitations on workers compensation claims: one year from the date of the accident, one year from the last payment made in lieu of compensation for total or partial disability or three years from the last payment of supplemental earnings benefits, or one year from the time the injury develops if not immediately manifest, but no more than two years after the accident.
Reeves became ill on October 26, 1989 and the illness manifested itself immediately; he filed his claim on February 6, 1991, obviously more than one year after the incident. However, Reeves reiterates on appeal that prescription was suspended while his employer paid him wages in lieu of compensation.
Generally, "the payment of unearned wages during disability is treated as workmen's compensation," and the one-year prescription runs from the last payment. Dupaquier v. City of New Orleans, 260 La. 728, 257 So.2d 385, 387 (1972). The test to determine if wages were paid in lieu of compensation is whether the wages are actually earned by the employee. Warren v. H & W Steel Erectors Inc., 569 So.2d 178 (La.App. 1st Cir.1990), and citations therein; Carter v. Belle Chasse State School, 451 So.2d 63 (La.App. 4th Cir.), writ denied 458 So.2d 120 (1984), and citations therein.
The instant record includes copies of payroll checks from Reeves Dirt Pit to Reeves for the pay periods between the date of his injury and May 4, 1990. It is conceded that Reeves never actually earned any of these "wages." Reeves has thus met his burden of showing that he received unearned wages from his employer during the period of his disability. The prescriptive period should begin the date the last of these payments was made.
Defendants nevertheless contend that, in order to take advantage of the rule that the gratuitous payment of wages is payment in lieu of compensation, Reeves must show that those payments "lulled" him into a false sense of security so that he forbore to file suit until after the prescriptive period had passed. Indeed, this court has held that where a claimant shows that during his period of disability, he has continued to receive from or through his employer payments that could reasonably be construed as compensation benefits or payments in lieu of compensation, the defendant bears the burden of showing that the claimant actually understood the nature of payments or was unreasonable in the construction he placed on the payments. Foster v. Manville Forest Products Corp., 465 So.2d 920 (La.App.2d Cir.1985), citing Wesley v. Claiborne Elec. Co-op, Inc., 446 So.2d 857 (La.App.2d Cir.), writ denied 450 So.2d 955 (1984).
We do not believe that these estoppel or "lulling" cases are analogous to Reeves's situation. The claimant in Foster, for instance, received health insurance and long term disability insurance payments associated with his heart disability; the court found that Foster understood that the payments he received were not intended as compensation or payments in lieu of compensation, and that he had not been lulled into forbearance by the company's actions.
*884 The Wesley claimant received sick pay and vacation pay for a period of time after he suffered a heart attack; the court there found that Wesley, who had only a fourth grade education, did not understand the nature of the payments he received and was lulled into a sense of security which caused him to withhold asserting his workers compensation claim. In both cases, the companies paid the injured worker a benefit unrelated to workers compensation; thus the question was whether the claimant misunderstood the nature of the payments so that he did not pursue workers compensation, and if so, whether his misunderstanding was reasonable.
In the instant case, however, the employer made no attempt to classify the payments made to Reeves as sick pay, vacation pay, or anything else. Instead, the company issued checks to Reeves drawn on the payroll account in exactly the same amounts he received before his illness. Mrs. Reeves stated simply that she paid him so he could continue to eat and buy medicine. R. p. 50. By this action, she effectively fulfilled the employer's statutory obligation to compensate the injured employee for lost wages. Cf. Dupaquier v. City of New Orleans, supra; Malone and Johnson, Workers' Compensation, § 384, 13 La.Civ.L. Treatise 254, 255 (2d Ed.1980) ("checks unspecified as to their purpose" are treated as gratuitous payments in lieu of compensation and will interrupt prescription; such payments effectively acknowledge the employer's "compensation responsibility[.]"). We find that the payments made to Reeves by his employer were payments in lieu of compensation which interrupted prescription.
Furthermore, we would reach the same result even if we believed the "lulling" jurisprudence applied to this case. By introducing payroll checks drawn in the amount of pre-injury wages which the employer did not characterize as anything other than compensation, Reeves showed that he received payments from his employer which could be reasonably construed as compensation benefits or payments in lieu of compensation. Foster, supra. Further, even if the employer did covertly intend the post-injury payments to be something other than payments in lieu of compensation, we believe that defendants failed to meet their burden of showing that Reeves "actually understood the [intended] nature of the payments or was unreasonable in the construction" he placed on them. Id.
As defendants note, the instant situation is distinguishable from the typical employment relationship; Reeves was the president of the company and his wife was the company officer who authorized his weekly payments. While such an employment relationship might conceivably lend itself to the abuse of workers comp provisions, the facts of the present case do not support such a finding. By continuing to make post-injury payments to Reeves in the amount of his pre-injury wages, Mrs. Reeves, as secretary-treasurer of the company, was merely fulfilling the company's statutory obligation to compensate injured employees for the loss of salary. The record clearly demonstrates that Mrs. Reeves's experience with workers compensation claims was quite limited. She testified that she had dealt with only three comp claims in the last five years, including her husband's, that she had never before needed to take action beyond submitting the claim to the compensation insurer, and had never read the fine print on the claim forms. She stated that, while there was no doubt Reeves was working when he became ill, she had no idea at the time that the injury might be compensable under the company's comp policy. She testified that she first learned her husband's injury might be compensable from an insurance agent she consulted about health insurance when Reeves Dirt Pit's health insurer became insolvent months after the injury. She immediately asked Don Whitlock about this, and the claim was promptly filed with Travelers. Thus, nothing in the record suggests that Mrs. Reeves had unsavory motives for making post-injury payments to her husband. Rather, the record supports the conclusion that Mrs. Reeves had little or no knowledge of the intricacies of workers compensation.
*885 Although nothing she did as an officer of the company can be construed as a purposeful attempt to lull Reeves into inaction, her actions were certainly sufficient to lead Reeves to reasonably conclude that the post-injury payments were made in lieu of compensation.
Indeed, the pertinent determination in the Foster analysis is the claimant's understanding of the payments made to him and the reasonableness of that understanding. The employer's intent in making such payments, while relevant, is not determinative on this issue. See Wesley, supra, at 860 (noting that an employer may intentionally or unintentionally lull an employee into false security). Although Reeves was president of the company, his involvement with the business consisted of working with and supervising the employees in dirt pit operations. He had no part in paying employees or making decisions about the company's insurance. He definitely did not participate in the decision to submit his medical bills to the company's health insurer rather than to seek workers compensation benefits; he stated that Mrs. Reeves "takes care of all that." R. p. 58.
Moreover, Reeves was very ill when the wage-substitution payments began and has been maintained on heavy medication ever since. There is even evidence to suggest that he suffered brain damage as a result of his illness. Thus, during the time he was receiving payments from the company, Reeves was not the savvy entrepreneur defendants suggest. He was, instead, an extremely ill man who continued to receive checks drawn on the company's payroll account in exactly the same amounts he received before his illness.
The record simply does not show that Reeves understood the payments as anything other than compensation for lost wages; nor does it indicate this understanding was unreasonable.
Under the liberal rules of construction afforded the workers compensation statute, we find that Reeves successfully showed that he received unearned wages in lieu of compensation. R.S. 23:1209; Dupaquier, supra. We further find that even if Reeves's employer intended the payments to be something other than payments in lieu of compensation, the defendants have failed to prove that Reeves understood the nature of the payments he received, or that the construction he placed on the payments was unreasonable. Foster v. Manville Forest Products Corp., supra. The one year prescriptive period began May 4, 1990, when Reeves received his last payment from the company. His suit filed in February 1991 was thus timely.
As we find merit in Reeves's statutory argument, we need not fully consider the other arguments briefed. It is noteworthy, however, that the adjustment company directed Ms. Hunt to schedule independent medical evaluations after the one-year anniversary date of the injury had passed. The claim was denied only after the company received these reports, which were favorable to Reeves's claim.

CONCLUSION
The Memorandum Opinion and Order sustaining defendants' exception of prescription is reversed. The case is remanded for consideration of the merits. Costs of this appeal are assessed to appellees Reeves Dirt Pit, Inc. and Travelers Ins. Co.
REVERSED AND REMANDED.
HIGHTOWER, J., concurs, but recognizes the peculiarity of the circumstances.