727 So.2d 1194 (1999)
Gloria King BOSEMAN
v.
ORLEANS PARISH SCHOOL BOARD.
No. 98-CA-1415.
Court of Appeal of Louisiana, Fourth Circuit.
January 6, 1999.
*1195 Charles Larry Samuel, III, Diane R. Lundeen, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Trevor G. Bryan, Bryan & Jupiter, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES III, Judge STEVEN R. PLOTKIN.
PLOTKIN, Judge.
Defendant Orleans Parish School Board appeals a trial court judgment awarding plaintiff Gloria King Boseman $54,092.86, plus full sick leave without reduction in pay or accrued sick leave pay until her disability ceases to exist. Ms. Boseman cross appeals. We affirm the trial court judgment.

Facts
Ms. Boseman allegedly suffered severe injuries on January 6, 1994, while attempting to separate two female students who were fighting in her classroom at L.B. Landry High School. Two other students, who had been watching the fight, then became involved. Ms. Boseman claims that one of these two students punched her violently and forcefully in the back. Then, the other student joined the first one, she said, beating her repeatedly and throwing her against both a wooden bookcase and a bulletin board. As a result, Ms. Boseman allegedly suffered a herniated lumbar disc, carpal tunnel syndrome, knee injuries necessitating surgery, major depression, and post-traumatic stress syndrome.
The School Board paid Ms. Boseman sick leave pay pursuant to LSA-R.S. 17:1201(C)(1)(b), for the first 90 days following the incident. Thereafter, the School Board paid Ms. Boseman worker's compensation benefits. Ms. Boseman filed a claim for continuation of benefits under LSA-R.S. 17:1201(C)(1)(a), which was denied. Ms. Boseman filed the instant suit, seeking full benefits under the provisions of LSA-R.S. 17:1201(C)(1)(a), the assault provision. Following a two-day trial, the trial judge awarded Ms. Boseman $54,092.86, plus legal interest, and ordered the School Board to pay Ms. Boseman full sick leave without reduction in pay or accrued sick leave until her disability resulting from the incident "ceases to exist." The School Board challenges the judgment, raising two issues:
(1) the trial court improperly applied the three-year prescription period established by La. C.C. art. 3494 to this action, and
(2) the trial court improperly concluded that Ms. Boseman was entitled to benefits under LSA-R.S. 17:1201(C)(1)(a), as opposed to LSA-R.S. 17:1201(C)(1)(b).
Ms. Boseman's cross-appeal also raises two issues:
(1) the trial court improperly denied her request for expenses and attorney fees and expenses caused by the School Board's untimely and improper responses to requests for admissions, and
(2) the trial court improperly granted her expert psychiatric witness fees of only $600.
We note that neither of the parties contest any of the trial court's factual findings, but only raise issues of law.

Prescription
The first issue raised by the School concerns the proper prescriptive period applicable to this case. Determination of whether the trial court properly applied the three-year prescriptive period established by La. C.C. art. 3494, as opposed to the one-year prescriptive period established by La. C.C. art. 3294, depends on whether the trial *1196 court correctly determined that Ms. Boseman's claim was a claim "for the compensation for services rendered," as opposed to a delictual action.
La. C.C.P. art. 3494(1) establishes a three-year prescriptive period for the following type of action: "An action for the recovery of compensation for services rendered, including payment of salaries, wages, commissions, tuition fees, professional fees, fees and emoluments of public officials, freight, passage, money, lodging, and board." The School Board claims that Ms. Boseman's action does not fall under any of the listed categories, but is instead simply a delictual claim, subject to the one-year prescriptive period established by La. C.C. art. 3492. The prescriptive period established by La. C.C. art. 3494 applies only to claims for earned compensation, the School Board argues, not to claims for sick leave, which is not given as compensation for services already rendered.
In support of its argument, the School Board cites the following quote from Reeves v. Reeves Dirt Pit, 606 So.2d 881 (La.App. 2 Cir.1992): "Generally, `the payment of unearned wages during disability is treated as workmen's compensation,' and the one-year prescriptive period runs from the date of last payment." However, the Reeves case is distinguishable from the instant case. In Reeves, the court considered only the three different prescriptive periods applicable to workers compensation claims established by LSA-R.S. 23:1209. The question of whether a claim for sick leave is a delictual action was not even addressed. Additionally, and perhaps more importantly, the Louisiana Supreme Court, in Montiville v. City of Westwego, 592 So.2d 390 (La.1992), applied the three-year prescriptive period established by La. C.C. art. 3494 to an action for sick leave and annual leave, without discussion or explanation. Following the Supreme Court's decision, we find that the trial court properly applied a three-year prescriptive period to Ms. Boseman's claim for sick pay.

Applicable sick leave provision
The second issue raised by the School Board relates to the proper sick leave provision to be applied under the facts of the instant case. LSA-R.S. 17:1201, relative to sick leave pay for injuries sustained by Louisiana public school teachers on the job, includes two different provisions, depending on the cause of the teacher's injury. The question raised by the parties in the instant case is whether Ms. Boseman's injuries should be considered covered under the "assault pay provision" of LSA-R.S. 17:1201(C)(1)(a) or the "physical contact provision" LSA-R.S. 17:1201(C)(1)(b). Those provisions provide, in pertinent part, as follows:
(a) Any member of the teaching staff of the public school who is injured or disabled while acting in his official capacity as a result of assault or battery by any student or person shall receive sick leave without reduction in pay and without reduction in accrued sick leave days while disabled as a result of such assault and battery.
(b) Any member of the teaching staff of the public schools who, while acting in his official capacity, is injured or disabled as a result of physical contact with a student while providing physical assistance to a student to prevent danger or risk of injury to the student shall receive sick leave for a period up to ninety days without reduction in pay and without reduction in accrued sick leave days while injured or disabled as a result of rendering such assistance.
The trial court found that LSA-R.S. 17:1201(C)(1)(a) (hereinafter the "assault pay provision") applied. The School Board claims that LSA-R.S. 17:1201(C)(1)(b)(hereinafter "the physical contact provision") should apply. The School Board claims that the trial court improperly developed a reasonable man standard to distinguish between the two provisions, then improperly applied even that standard. The School Board claims that Ms. Boseman's injuries could not fall under the "assault pay" provision because a reasonable teacher under the circumstances would have anticipated the attack. Ms. Boseman's injuries, the School Board claims were caused by "physical contact" with a student while she was providing physical assistance to another student to prevent danger or risk of injury to the student, making the physical contact provision applicable. *1197 Ms. Boseman, on the other hand, claims that her injuries were caused by an assault and battery perpetuated by the students who intervened in the fight.
If this court accepted the arguments of the parties in this case, it would be forced to choose one or the other of the categories cited as the applicable provision governing the sick pay dispute in this case. However, we believe that it is unnecessary for the court to make such a choice. Both parties are right: Ms. Boseman's injuries were sustained by physical contact with a student, as the School Board says. Ms. Boseman's injuries were also sustained by an assault and battery, the latter of which is a physical contact. This conclusion is further explained below.
The Louisiana Legislature's adoption of LSA-R.S. 17:1201(C) in 1983 reflects its concern for the fact that public school teachers face increasingly greater risks in our society. As we read the legislative scheme established by LSA-R.S. 17:1201, the provision is intended to provide three levels or classifications of protection to public school teachers, resulting in increased benefits depending on the type of conduct that causes injury to the teacher. The general provision, LSA-R.S. 17:1201(D), establishes the first level of protection, providing for "weekly wage benefits" under the Louisiana worker's compensation law for any teacher "injured or disabled while acting in his official capacity." Thus, subsection (D) provides generally for any injury or disability occurring while the teacher is acting in his official capacity, as when a teacher slips on carpet or falls down stairs. LSA-R.S. 17:1201(C) is a special provision which establishes the second level of protection for public school teachers. It is designed to provide extra compensation, in addition to the weekly wage benefits provided by LSA-R.S. 17:1201(D), when a teacher is injured because of contact with a student. See LSA-R.S. 17:1201(C)(2). Of the two subsections of LSA-R.S. 17:1201(C), the second, the physical contact provision, is the general provision, which applies in addition to weekly wage benefits, if the injury or disability which occurs while the teacher is acting in his official capacity is caused by any type of physical contact with a student, accidental or intentional. The first subsection, the assault pay provision, provides the third level of protection, adding additional compensation when the contact with a student which causes the teacher's injury is an assault and battery.
Thus, the question to be decided is not whether Ms. Boseman's injuries in this case were caused by an assault and battery, as opposed to a physical contact, but whether the injuries were caused by a physical contact which was also an assault and battery. The trial court found that the attack on Ms. Boseman by the two students who intervened in the fight was an assault and battery. "Battery" has been defined by the Louisiana Supreme Court as "a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." Caudle v. Betts, 512 So.2d 389, 390 (La.1987). The type of intent required is described in Caudle as "intent to bring about a result which will invade the interests of another in a way that the law forbids." Id. Given the fact that the record indicates that the attack on Ms. Boseman continued for some unspecified period of time, the necessary intent appears to be present, even without resorting to the doctrine of transferred intent. This was not a situation where a teacher simply came between two students who were fighting and got caught in the crossfire. The students who battered Ms. Boseman were not even involved in the initial fight, but were watching from the sidelines. When they decided to enter to fray, they did not simply push Ms. Boseman out of the way; they hit her and pushed her into classroom furniture. Ms. Boseman suffered serious injury at the hands of the students. Given those facts, the trial court's finding that Ms. Boseman suffered a battery at the hands of her students is not manifestly erroneous.
Accordingly, the trial court judgment awarding Ms. Boseman $54,092.86, plus legal interest, and ordering the School Board to pay Ms. Boseman full sick leave without reduction in pay or accrued sick leave until her disability resulting from the incident "ceases to exist" is affirmed.

Expenses and attorney fees
*1198 The first issue raised by Ms. Boseman's cross appeal relates to the trial court's denial of her request for expenses and attorney fees for the School Board's untimely and improper failure to admit the following: "That two students hit Ms. Boseman in her back and physically knocked her out of the way." In support of this argument, Ms. Boseman quotes La. C.C.P. art. 1472[1], which provides as follows:
If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make such an order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.
(Emphasis added.) Ms. Boseman claims that the court's use of the word "shall" makes the order for expenses and attorney fees mandatory under the circumstances of this case.
A review of the caselaw interpreting La. C.C.P. art. 1472 reveals that parties rarely take advantage of its provisions. However, this court has previously held that a party who fails to admit a fact later proven at trial, then fails to either show reasons it could not have admitted the fact or show that it had reasonable grounds to believe that it had reasonable grounds to believe that it might prevail on the particular factual matter at trial may be subject to an order for expenses and attorney fees. New Orleans Public Service, Inc. v. Checker Cab Co., 332 So.2d 489 (La.App. 4 Cir.1976). The court stated as follows:
The purpose of sanctions against parties who unjustifiably resist discovery is to make the discovery articles effective. C.C.P. art. 1496 [now La. C.C.P. art. 1466] was designed to require the admission of facts which ought not to be disputed at trial, so as to eliminate the time, trouble and expenses of proving uncontroverted facts. C.C.P. art. 1514 makes the admissions procedure workable by imposing the cost of proof upon the litigant who improperly refuses to admit a matter. See 8 Wright and Miller, Federal Practice and Procedure s 2290 (1970), discussing Federal Rule 37(c).
Id. at 490 (some footnotes omitted).
In the instant case, the only reason for the failure to admit given by the School Board is the fact that parties often fail to admit such pivotal facts during the discovery phase. The failure to properly admit a fact not in dispute causes serious injury to the opposing party, the most important of which is the fact that it causes excessive adverserial conduct on the part of lawyers; this in turn leads to increased costs, delay, disrespect for law, unprofessional conduct, and disillusionment with the practice of law. The harm to society also includes the inefficient use of the judicial process and the waste of judicial resources protected by the rules requiring admission. Moreover, as Ms. Boseman notes, La. C.C.P. art.1972, as quoted above, makes the award of expenses and attorney fees mandatory under the circumstances of this case. Under the express language of La. C.C.P. art. 1472, the trial court should have imposed expenses and attorney fees on the School Board. Ms. Boseman is hereby awarded $1000.

Expert witness fees
The first issue raised by Ms. Boseman's cross appeal relates to the trial court's award of attorney fees for her expert medical witness, Dr. Paul Kantack. The trial court awarded only $600 in expert witness fees, despite the fact that Dr. Kantack was an eminently-qualified psychiatric witness who was required to spend more than 8¼ hours on the case, 3½ of which were spent in court when the trial judge interrupted his testimony to attend an en banc meeting. Ms. Boseman calculates the award to provide Dr. Kantack only approximately $72.72 per hour for his own time, plus the expenses of running *1199 his office while he was sitting in court waiting for the trial to resume. Ms. Boseman claims that the fee actually charged by Dr. Kantack was much larger.
As with other costs, a trial judge enjoys great discretion under La. C.C.P. art. 1920 in the taxing of expert witness fees. Thus, trial courts are not bound by agreements concerning expert witness fees, by the expert's statements concerning his charges, or by the actual fee paid to an expert witness. Murphy v. Boeing Petroleum Services, Inc., 600 So.2d 823 (La.App. 3d Cir.1992). In fact, those facts should not even be considered by courts when determining fees. Id. Moreover, a trial court has discretion to refuse to tax the costs of the prevailing party's expert witnesses against the losing party. Ashley Enterprises, Inc. v. Esplanade Plaza Co., 425 So.2d 1010 (La. App.5 Cir.), writ denied, 432 So.2d 270 (La. 1983). Considering all these principles, we find no abuse of the trial court's discretion in setting the expert witness fee for Dr. Kantack at $600.

Conclusion
The trial court judgment is amended to award Ms. Boseman $1000 in expenses and attorney's fees flowing from the School Board's failure to admit a fact proven at trial. In all other respects, the trial court judgment is affirmed. All costs are assessed to the School Board.
AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] Incorrectly identified in Ms. Boseman's brief to this court as La. C.C. art. 1466.