874 So.2d 265 (2004)
Annie Mae I. MITTER
v.
TOURO INFIRMARY.
No. 2003-CA-1608.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 2004.
Rehearing Denied June 15, 2004.
*267 Charles A. Kronlage, Jr., Kronlage & Kronlage, APLC, New Orleans, LA, for Plaintiff/Appellant, Annie Mae I. Mitter.
Paul B. Deal, Lemle & Kelleher, L.L.P., New Orleans, LA, for Defendant/Appellee, Touro Infirmary.
(Court composed of Judge JAMES F. McKAY, III, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
In this medical malpractice case, the plaintiff, Annie Mae Mitter, appeals from two judgments of the trial court rendered in her favor; the first judgment awarded her damages of $1,500.00 for pain and suffering in addition to costs and legal interest and the second judgment awarded her expert witness fees of $1,000.00. The defendant, Touro Infirmary, answers the appeal.

FACTS AND PROCEDURAL HISTORY
Ms. Mitter, seventy-nine years of age, underwent arthroscopic surgery to replace her left knee at Touro Infirmary in June 1998. Dr. J. Gregory Kinnett, an orthopedic surgeon and Touro staff physician, performed the surgery. Four months later, in October 1998, Ms. Mitter underwent a second left knee arthroplasty by Dr. Kinnett at Touro.
Ms. Mitter filed a medical malpractice complaint pursuant to the Louisiana Medical Malpractice Act[1]. In her complaint, she asserted that Touro's non-physician employees committed three separate acts of medical malpractice during her two hospitalizations. Specifically, she complained that three days after her first knee surgery, while a nurse and nurse's aide were helping her get into a wheelchair, the nurse dropped the removable, metal leg and foot rest of the wheelchair onto her left knee. She further alleged that several days later, while undergoing physical therapy in Touro's rehabilitation unit, Sidney Stone, a physical therapy assistant, used excessive force to push her leg back, causing her knee to "pop." These two acts, Ms. Mitter alleged, caused the rupture of the medial (internal) collateral ligament in her left knee, which resulted in her having to *268 undergo the second operation. The third act of alleged medical malpractice occurred following the second surgery when a nurse improperly set the chronic passive motion (CPM) machine[2] during therapy, causing Ms. Mitter intense pain.
A medical review panel was convened to hear the claims. The panel, consisting of three orthopedic surgeons and an attorney-chairman, unanimously concluded that Touro did not breach the applicable standard of care. The panel gave the following reasons:
1. The patient was seen by numerous physicians shortly after the incidents and none of the doctors failed to meet the applicable standard of care.
2. There [was] no offer of contradictory statements that the incidents happened.
Ms. Mitter then filed suit against Touro. Following a judge trial, the trial court found that Ms. Mitter failed to prove by a preponderance of the evidence that Touro's employee breached the applicable standard of care by improperly setting the CPM machine during therapy after her second surgery or that Mr. Stone breached the applicable standard of care by applying excessive force during physical therapy following the first surgery. However, the trial court did find that a Touro nurse breached the applicable standard of care by dropping the wheelchair foot and leg rest on Ms. Mitter's left knee, causing her intense pain. Nonetheless, the court concluded that Ms. Mitter failed to prove that either the dropped foot and leg rest incident or Mr. Stone's actions caused her to have to undergo the second knee operation. In accord with her findings, the trial court awarded Ms. Mitter $1,500.00 in damages for her pain and suffering as a result of the nurse's negligence.
Thereafter, Ms. Mitter filed a motion to tax Dr. Kinnett's expert witness fee as costs against Touro. The trial court granted the motion but limited Dr. Kinnett's expert witness fee to $1,000.00.

ASSIGNMENTS OF ERROR
On appeal, Ms. Mitter raises the following three assignments of error: 1) the trial court erred, as a matter of law, in requiring her to prove with "reasonable certainty" that the nurse's dropping of the foot and leg rest on her left knee contributed to her having to undergo the second left knee operation; 2) the trial court abused her discretion in awarding only $1,500.00 in damages for pain and suffering as a result of the nurse's negligence; and 3) the trial court abused her discretion in limiting Dr. Kinnett's total expert witness fee to $1,000.00.
In answering the appeal, Touro argues that the evidence in the record does not support an award for pain and suffering, as Ms. Mitter's medical records do not indicate that the alleged wheelchair foot and leg rest incident ever occurred or that Ms. Mitter sustained any additional injury as a result of it. Touro also argues that the trial court abused her discretion in assessing all costs of the proceedings against it, as it successfully defended all but one of Ms. Mitter's claims.

STANDARD OF REVIEW
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). In Mart v. Hill, 505 So.2d 1120, *269 1127 (La.1987), the Louisiana Supreme Court reiterated the two-part test for the reversal of a fact finder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous.
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La. 1992). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

APPLICABLE LAW AND DISCUSSION
Negligence and Fault
A hospital is responsible for the negligence of its nurses under the respondeat superior doctrine. In re Triss, XXXX-XXXX, XXXX-XXXX, p. 13 (La.App. 4 Cir. 6/5/02), 820 So.2d 1204, 1212. Nurses, including licensed practical nurses, are defined as qualified health care providers under La. R.S. 40:1299.41(A)(1). Thus, in a medical malpractice case, the plaintiff must establish the standard of care applicable to the nurse, a violation by the nurse of that standard of care, and a causal connection between the nurse's alleged negligence and the plaintiff's injuries resulting therefrom. See Pfiffner v. Correa, 94-0924, p. 8 (La.10/17/94), 643 So.2d 1228, 1233.
Expert testimony is not required in a medical malpractice case when there is some obvious act from which a lay person can infer negligence, such as fracturing a leg during an examination, amputating the wrong limb, dropping a knife, scalpel, or acid on the patient, leaving a sponge in a patient's body, failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary. Johnson v. State of Louisiana/University Hospital, XXXX-XXXX, p. 5 (La.App. 4 Cir. 1/16/02), 807 So.2d 367, 371.
As previously mentioned, the trial court found that Touro's nurse breached the applicable standard of care by dropping the wheelchair foot and leg rest on Ms. Mitter's knee, causing her increased pain, but concluded the evidence was insufficient to prove that the incident contributed to her need to undergo the second knee surgery. In her reasons for judgment, the trial court stated, "Dr. Kinnett could not state with reasonable certainty that any incident which may have occurred at Touro contributed to her need for future surgery."
Ms. Mitter argues that the trial imposed the wrong legal standard by requiring her to prove "with reasonable certainty" that the incident caused further injury to her knee necessitating the second surgery. She contends that to satisfy her burden of proof she had to demonstrate only by a preponderance of the evidence, i.e., more likely than not, that the nurse's negligence caused her to have to undergo the later surgery. Touro, on the other hand, contends the evidence does not support the finding that the incident ever occurred.
Ms. Mitter testified at trial that three days following her first knee surgery a nurse and another hospital employee, whom she believed was named "James," *270 came into her room to assist her in getting out of bed and seated in a wheelchair as per Dr. Kinnett's orders. While doing so, the nurse dropped the wheelchair's foot and leg rest on her left knee. Ms. Mitter, testifying as to the severity of the pain, stated, "I screamed to the top of my voice. I have never had nothing to hurt me so bad in my life, except that day when that dropped on my leg."
Ms. Ruby Olive, Ms. Mitter's roommate, testified that she heard Ms. Mitter scream but did not actually witness the incident. When she asked Ms. Mitter what happened, Ms. Mitter replied that the nurse hit her left knee with a part of the wheelchair. Ms. Olive testified that neither the nurse nor the other employee contradicted Ms. Mitter's statement. In addition, Ms. Olive stated that when she looked at Ms. Mitter's side of the room, she noticed a part of the wheelchair still on the floor.
Ms. Mitter's sister, Ms. Viola Hopkins, testified that when she visited her sister later that same day, her sister was complaining of severe pain and told her that the nurse had dropped the wheelchair leg rest on her left knee.
Touro defended the claim by offering the testimony of Juliette Phipps and Rosa Scott, two registered nurses who cared for Ms. Mitter following her first knee surgery. Ms. Phipps testified that she worked the 7:00 a.m. to 7:30 p.m. shift but did not recall an incident in which a nurse dropped a wheelchair leg rest on Ms. Mitter's knee. In reviewing Ms. Mitter's hospital records, Ms. Phipps noted that the alleged incident was never documented. She also testified that had the incident occurred she would have reported it to Dr. Kinnett and to the nursing supervisor on duty as well as noting it in Ms. Mitter's chart. Ms. Scott, the night duty nurse, worked from 7:00 p.m. to 7:30 a.m. She, too, did not recall the accident and corroborated nurse Phipps' testimony that if it did, in fact, happen, Touro's policy required her to report the incident. On cross-examination, both Ms. Phipps and Ms. Scott acknowledged that during their respective shifts other nurses were also on duty who may have tended to Ms. Mitter.
Although Ms. Mitter's medical records contain no mention of the incident, the trial judge believed Ms. Mitter's testimony that a nurse dropped the wheelchair foot and leg rest on her left knee. She also found significant Ms. Olive's testimony that neither the nurse nor James refuted Ms. Mitter's claim. After reviewing the record, we find no error in the trial court's finding that the incident occurred. In addition, we find no error in the trial court's conclusion that the unidentified Touro nurse breached the standard of care applicable to nurses despite the absence of expert testimony regarding the standard of care. The trial judge could certainly infer negligence from the nurse's actions.
Next, we consider whether the trial judge erred in concluding that the evidence was insufficient to prove the nurse's negligence was the cause of Ms. Mitter's need to undergo the second knee surgery.
Dr. Kinnett testified that Ms. Mitter was discharged from Touro on June 29, 1998, eighteen days after the first surgery. One week later, on July 6, he examined her at a follow up office visit and noted that she was progressing well. Ms. Mitter returned for another follow up visit on August 5, at which time Dr. Kinnett concluded that her knee looked good and nothing indicated a delay in healing. According to Dr. Kinnett, Ms. Mitter called his office on August 17 and said she was not necessarily feeling any pain but wanted to see him. She returned to his office on August 19, complaining of instability of the medial aspect of her left knee. At that time, Ms.
*271 Mitter informed Dr. Kinnett that ten days earlier, as she was walking down an incline and stepping off the curb at the bottom, she sustained "a torsional valgus injury" or an abnormal, inward turn of the knee and, as a result, had trouble moving it. Dr. Kinnett examined the knee and found nothing wrong with the total knee arthroplasty, per se, but noted a problem with the medial collateral ligament. He prescribed a knee brace and recommended that Ms. Mitter use crutches. Several weeks later, Dr. Kinnett performed the second left knee surgery to repair the ruptured collateral ligament. According to Dr. Kinnett, nothing in the medical records indicated Ms. Mitter had a problem with the medial collateral ligament prior to the August 19 visit. However, when asked by Ms. Mitter's counsel whether a blow to the left knee three days post operatively could have been a contributing factor to the rupture of the medial collateral ligament, Dr. Kinnett replied, "I believe it could have been." Also, when asked whether such a blow could have weakened the collateral ligament so as to make it more vulnerable to being ruptured by stepping off the curb as described by Ms. Mitter, Dr. Kinnett replied, "That's correct." Nevertheless, Dr. Kinnett reiterated that nothing indicated that she needed additional surgery on the left knee at the July 6 and August 5 office visits.
Although the trial judge noted "Dr. Kinnett could not state with reasonable certainty" that any incident which may have occurred at Touro contributed to the second knee surgery, we do not find that she applied an incorrect burden of proof in evaluating Ms. Mitter's claim. The evidence in the record indicates that it was more likely than not or equally possible that Ms. Mitter's stepping off the curb at the bottom of the incline and twisting her knee inward caused the rupture of the medial collateral ligament in the left knee.
As the trial court correctly noted, until that incident, Ms. Mitter had no complaints with her left knee after being discharged following her first surgery. Thus, we cannot say the trial court erred in concluding that Ms. Mitter did not prove the nurse's negligence caused her to undergo the second knee surgery.
Damages
In her second assignment of error, Ms. Mitter contends the trial court's award of $1,500.00 in damages for pain and suffering is too low. Touro counters that the evidence does not support the award.
"`General damages involve physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and other factors which affect the victim's life.'" In re Triss, supra, at p. 24 (La.App. 4 Cir. 6/5/02), 820 So.2d at 1218, citing Delphen v. Dep't of Transp. & Dev., 94-1261, p. 13 (La.App. 4 Cir. 5/24/95), 657 So.2d 328, 336. The standard of review for abuse of discretion in awarding general damages is "difficult to express and is necessarily non-specific." Cone v. National Emergency Services, Inc., 99-0934, p. 8 (La.10/29/99), 747 So.2d 1085, 1089. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Supreme Court stated:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular *272 circumstances that the appellate court should increase or reduce the award.
623 So.2d at 1261.
The trial court awarded general damages, finding the nurse's negligent dropping of the wheelchair foot and leg rest on Ms. Mitter's left knee caused her an increase in pain. The trial court noted in her reasons for judgment that Ms. Mitter's medical records reflect that on the day of the incident, "she had increased complaints of knee pain." After reviewing the record, we agree with the trial court's conclusion that general damages are warranted. Although the $1,500.00 award is not generous by any means, we cannot say, in applying the Youn standard, that it is an abuse of the court's discretion.
Costs
In answering the appeal, Touro contends that the trial court abused her discretion in assessing all costs of the proceedings to it.
La. C.C.P. art. 1920, relative to costs, provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
Although Touro successfully defended two of the three claims against it, the trial court cast Touro in judgment for the damages sustained by Ms. Mitter as a result of its nurse's negligence. Considering the trial court's vast discretion to tax costs pursuant to La. C.C.P. art. 1920, we decline to disturb the assessment of costs in this case.
In a related issue, Ms. Mitter argues that the trial court abused her discretion in limiting Dr. Kinnett's total expert witness fee to $1,000.00. She subpoenaed Dr. Kinnett to testify as an expert at trial and his total fee was $2,012.00.
As with other costs, the trial court enjoys great discretion under La. C.C.P. art. 1920 in the taxing of expert witness fees. Boseman v. Orleans Parish School Board, 98-1415, p. 9 (La.App. 4 Cir. 1/6/99), 727 So.2d 1194, 1199. Trial courts are not bound by agreements concerning expert witness fees, by the expert's statements concerning his charges, or by the actual fee paid to an expert witness. Id. Thus, we cannot say the trial court abused her discretion in setting Dr. Kinnett's expert witness fee at $1,000.00.

CONCLUSION
Accordingly, for the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 40:1299.41 et seq.
[2] A CPM machine is used during physical therapy rehabilitation to apply controlled sequential motion to a limb to facilitate extension and flexion.