400 So.2d 702 (1981)
The FIREPLACE SHOP, INC. and Willard B. Dugas
v.
The FIREPLACE SHOP OF LAFAYETTE, INC. and Dannie Phillip Garrett, Jr.
No. 14188.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*703 Randall G. Wells, and James D. Thomas, II, Baton Rouge, for plaintiff-appellee, The Fireplace Shop, Inc. and Willard B. Dugas.
John F. McKay, Baton Rouge, for defendant-appellant, The Fireplace Shop of Lafayette, Inc., and Dannie Phillip Garrett, Jr.
Before LOTTINGER, EDWARDS and PONDER, JJ.
PONDER, Judge.
Defendant appealed from a judgment declaring plaintiff, Willard B. Dugas, the owner of 50% of the capital stock of the Fireplace Shop of Lafayette, Inc. and placing said corporation in receivership.
The issues are: ownership of the Fireplace Shop of Lafayette, Inc., necessity for placing said corporation in receivership and denial of a motion for a new trial.
We affirm.
Plaintiff, Willard B. Dugas, and defendant, Phillip Garrett, are co-owners of the Fireplace Shop of Baton Rouge. Dugas, an original incorporator of FPS of Baton Rouge, hired Garrett, his brother-in-law, as general office manager in 1973 and offered to let him buy a 40% interest in the corporation. In 1976, the two entered into a pre-incorporation agreement to expand operations in Lafayette.
Because of a disagreement over owner percentage, the agreement was never signed. Nevertheless, the two proceeded with plans for the Lafayette corporation. A check for $3,000.00 from the Fireplace Shop of B. R. to the Fireplace Shop of Lafayette provided the corporation's initial capitalization. Dugas made several trips to Lafayette contacting builders and suppliers, sold several fireplaces on behalf of the planned corporation in Lafayette, and was instrumental in obtaining a warehouse for the business. In the meantime, defendant, without plaintiff's knowledge, incorporated the Fireplace Shop of Lafayette and had issued 100% of the stock to himself. Unaware of defendant's actions, plaintiff continued to play an active part in the corporation. He directed management from Baton Rouge, personally guaranteed both a $20,000.00 loan for the new corporation's working capital and an account with its major supplier. In 1976 corporate tax form signed by plaintiff and defendant on advice of their certified public accountant designated each as a 50% owner of the corporation. In March, 1977, plaintiff, still unaware of defendant's actions, entered into an agreement with defendant whereby Fireplace Shop of Lafayette stock would be issued 37½% to plaintiff, 37½% to defendant and 25% to a third party. For various reasons, the stock was never issued. The management of the Lafayette store gradually passed to defendant with plaintiff handling Baton Rouge and a New Orleans branch that the two had also incorporated on a fifty-fifty basis. In 1979 relations between the plaintiff and defendant became strained and for the first time defendant informed plaintiff that he had no legal interest in the Lafayette corporation. Plaintiff then filed suit praying to be named 50% owner of the Fireplace Shop of Lafayette and requesting said corporation be put into receivership because of defendant's ultra vires acts and fraud.
Defendant argues plaintiff failed to prove his 50% ownership interest in the Fireplace Shop of Lafayette. Although a stock certificate is prima facie evidence of corporate ownership, it is to be distinguished from actual ownership which may be determined from all the facts and circumstances of a case. Succession of McGuire, 151 La. 514, 92 So. 40 (La. 1922); Volker v. Crescent City Wholesale Florist, 17 So.2d 372 (La.App. Orleans Appeal, 1944); Finn v. Ponsaa, 308 So.2d 352 (La. App. 4th Cir. 1975), writ refused 313 So.2d 238. The trial court heard twenty-six witnesses over four days of hearing. Disinterested witnesses, including employees of the corporation and business associates, testified defendant stated he and plaintiff were fifty-fifty owners of the business. Most employees felt it was common knowledge that the Fireplace Shop of Lafayette was *704 owned equally. Although there was other conflicting testimony concerning the plaintiff's participation in the incorporation and management of the corporation, we find no manifest error in the court's determination that, from its inception, plaintiff considered himself an equal owner of the corporation with defendant and so conducted himself.
Defendant next claims the court had no legal basis for putting the Fireplace Shop of Lafayette into receivership.[1] The evidence reveals defendant made full use of plaintiff's expertise, time and credit for the benefit of the Fireplace Shop of Lafayette for three years while concealing plaintiff's exclusion from corporation ownership. We find defendant's actions constituted gross and persistent ultra vires acts in violation of plaintiff's rights. LSA-R.S. 12:151, supra. Kerlin v. Bryceland Lumber Co., 134 La. 463, 64 So. 289 (La. 1914); In re Receivership of Webre-Steib Co., 136 La. 272, 67 So. 1 (La. 1914). we find no error in the court's appointment of a receiver.
Defendant last claims the trial court erred denying his motion for a new trial. Relying on C.C.P. Art. 1972[2] he asserts the discovery after trial of a promissory note from the Fireplace Shop of Lafayette to Fireplace Shop of Baton Rouge, personally guaranteed by himself proves the $3,000.00 advanced by Fireplace Shop of Baton Rouge was a loan. We believe the actual nature of the $3,000.00 advance, which was subject to much heated and conflicting testimony, was but one of many factors considered by the trial court. Even conceding that the $3,000.00 was a loan, we find the preponderance of the evidence still supports plaintiff's claim to a 50% ownership interest in the corporation.
For the above reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 12:151 in part provides:

"A. The court may, after trial, appoint a receiver to take charge of the corporation's property when it is made to appear, in a proceeding instituted against the corporation:
"(1) By any shareholder or creditor, that the directors or officers of the corporation are jeopardizing the rights of its shareholders or creditors by grossly mismanaging the business, or by committing gross and persistent ultra vires acts, or by wasting, misusing or misapplying the assets of the corporation; or
"(2) By any shareholder or creditor, that the corporation's property has been abandoned, or that, by failure of the shareholders to elect directors, or the failure of the directors or officers to serve, there is no one authorized to take charge of or conduct its affairs; or
"(3) By any creditor, that the corporation is insolvent, or such creditor's claim has been reduced to judgment, on which execution has been issued and returned `nulla bona'; or
"(4) By any creditor, that property of the corporation has been seized under judicial process by fraud or collusion between the corporation, its directors, officers or shareholders, and any creditor; or
"(5) By any shareholder, that a majority of the shareholders are violating the rights of minority shareholders and endangering their interests; or
"(6) By a shareholder or shareholders, severally or jointly, who have been registered owners for a period of not less than six months of not less than twenty per cent of the entire outstanding shares of the corporation, that either of the grounds for involuntary dissolution set forth in R.S. 12:143 (A) (4) and (5) exists. * * *"
[2] C.C.P. Art. 1972:

"A new trial shall be granted, upon contradictory motion of any party, in the following cases:
"(1) Where the judgment appears clearly contrary to the law and the evidence;
"(2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or
"(3) In jury cases, as provided in Article 1814."