SUSAN M. CHEHARDY, Chief Judge.
|2Pefendant, the Jefferson Parish School Board, appeals from the district court’s judgment in favor of plaintiff, Susan Neathamer, a public school teacher who was awarded benefits for. an injury she sustained on the job. For the reasons that follow, we affirm in part, vacate in part, and render judgment.'
FACTS AND PROCEDURAL HISTORY
On February 25, 1987, Susan Neathamer ,was .employed by the Jefferson Parish School Board (“the School Board”) as a certified physical education teacher at Li-vaudais Junior High School in Terrytown, Louisiana. During her second period class that day,' Ms. Neathamer was injured while" breaking up a fight between two female students. The permanent effects of this injury prevented Ms. Neathamer from resuming her teaching career. She ultimately resigned from the [^School Board in 1989, attended law school, and became a licensed attorney in 1992.
Prior to this career change, Ms. Neath-amer had attempted 'to regain her health and resume her career as a teacher, seeking treatment from several doctors and undergoing years of physical therapy: During this period, while out of work and receiving workers’ compensation benefits, Ms. Neathamer filed a petition for damages on February 24,1988 against the two students and their mothers, the Jefferson Parish School Board, and the State of Louisiana through the Department of Education.
Also during this period, on January 27, 1989, Ms. Neathamer submitted a «request to the School Board for “assault pay” benefits, benefits reserved for public school teachers who are injured on the job as a result of an assault or battery. This request was denied with the following explanation: ■ •
In determining whether or not a "teacher is entitled to ‘assault pay,’ the personnel department of Jefferson Parish School Board looks to whether the act was an intentional act directed toward the teacher. In the past as in this case, when, a teacher is breaking up a fight between students and is injured, the injury falls within the worker’s compensa-tiop and not assault pay.
Ms. Neathamer incorporated this claim for assault pay into her petition for damages by way of an amending petition filed in 1990. Following years of pre-trial matters,[1] the issue of assault pay proceeded to a four-day bench trial in August 2014. On September 9, 2Q14, the district court rendered judgment in favor of Ms. Neathamer and against the School Board. The court found Ms. Néathamer’s injury was the result of a battery and awarded her assault pay in the amount of $68,248.47 plus costs and legal interest from date of judicial demand. The School Board appeals from this judgment.
J^DISCUSSION
On appeal, the School Board argues: (1) the district court erred in "finding Ms. Neathamer’s injury was the result of a battery entitling her to assault pay; and *409 (2) the district erred in its calculation of assault pay.
■At the core of this case is the “assault pay” provision in La. R.S. 17:1201(0). In February of 1987, this provided in pertinent part:
(1) Any teacher and superintendent of the public schools who- is injured and disabled while acting in his official capacity'as a result of as'sault by any student or person shall receive sick leave without reduction in pay and without reduction in accrued sick leave days while disabled as a result of such assault and battery. However, such teacher shall be required to present a .certificate from a physician certifying such injury and disability.
Under this former version -of the law, if a public school teacher was injured on the job by means other than an assault or battery, he was only entitled to general workers’ compensation benefits. In 1991, the legislature amended the law to add another category of benefits for public school teachers who were injured as a result of physical contact with a student initiated to protect a student from danger or risk of injury. See Acts11991, No. 360; § 1, eff. July 6,1991. With this addition, known as the “physical contact” provision, the legislature apparently sought to supply an enhanced level of protection for teachers injured while breaking up fights between students. This addition reflected a legislative determination that under the prior vei-sion of the law, teachers so injured were relegated to general workers’ compensation benefits because such injuries typically did not qualify for compensation under the assault pay provision.
Admittedly, this post-1991 version of the law does not apply to the present case. Nevertheless, the current version of La. R.S. 17:1201(C)(l)(a) is substantively the same as it. was in 1987; and the jurisprudence interpreting the current version is instructive.
1 ¿Interpreting the law after the 1991 amendment, the Louisiana Fourth Circuit observed that La. R.S. 17:1201 provides three levels or classifications of protection for public school teachers, conferring benefits according to the type of conduct that causes the teacher’s injury. See Boseman v. Orleans Parish Sch. Bd., 98-1415 (La.App. 4 Cir. 1/6/99), 727 So.2d 1194, 1197, writ denied, 99-390 (La.4/1/99), 742 So.2d 554.
. The first level of protection- provides general workers’ compensation, benefits for a teacher “injured or disabled, while acting in his official capacity.” Boseman, supra. (citing La. R.S. 17:1201(D)). This applies to any injury or disability sustained while on the job, such as when a teacher slips or falls-down stairs. Id.
The second and third levels of protection provide benefits in addition to general workers’ compensation when a teacher is injured as a result of physical contact with another person. Boseman, supra; La. R.S. 17:1201(C). ThE second level of protection, the physical contact provision, applies if the teacher “is injured or disabled as "a result of physical contact with a student whiie providing physical assistance to a’ student to prevent danger or risk of injury to the student.” La. R.Si 17:1201(C)(i)(b)(i). The 'third and highest level of protection,’ the assault pay provision, applies if the teacher “is injured or disabled ... ás a result Of assault or battery by any student or person.” La. R.S. 17:1201(C)(l)(a).
In this case, -it. is not disputed that Ms. Neathamer was injured' as a result of physical contact with a student. The district court found this physical contact amounted to a battery, entitling Ms. *410 Neathamer to assault pay. The School Board disagrees and asks us to review that finding here on appeal.[2]
| fiÁs this was a factual finding, our review is conducted under the manifest error/clearly wrong standard. Under this standard, a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To reverse a trial court’s factual findings, the appellate court must: (1) find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) determine that-the record establishes the finding is clearly wrong or manifestly' erroneous. Stobart, supra.
The issue to be resolved, by a reviewing court is not whether the factfinder was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. The reviewing court must always keep in mind that if the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-83.
The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Stobart, supra at 883. Thus, where two permissible views of the evidence exist, the-factfinder’s choice between them eannot be manifestly erroneous or clearly wrong. Id.
^Nevertheless, it is not that a trial court’s factual findings cannot ever, or hardly ever, be upset. Ambrose v. New Orleans Police Dep’t Ambulance Serv., 639 So.2d 216 (La.1994). Although deference to the factfinder should be accorded, appellate courts nonetheless have -a constitutional duty,to review facts. Id. This constitutional function gives an appellate court the right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support. Id. Accordingly, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Stobart, supra at 882.
With this standard of review in mind, we now consider the law governing the district court’s finding that Ms. Neathamer’s injury was the result of a battery.
Battery in the civil context is “a harmful or offensive contact with a person, *411 resulting from an act intended to cause the plaintiff to suffer such contact.”[3] Caudle v. Betts, 512 So.2d 389, 391 (La.1987). “Act” and “intent” have generally accepted meanings in the fields of tort' and criminal law in Louisiana. Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981). “Act” denotes an external manifestation of the actor’s will which produces consequences. Id. Without volition, there cannot- be an act subjecting a person- to civil or criminal liability. Id. Therefore, a contraction of a person’s muscles which is purely a'reaction to some outside force, such as a knee jerk or the blinking of the eyelids in defense against an approaching missile, or the convulsive movements-of an-epileptic, are not acts of that person. Id. “Intent” is' either (1) the conscious desire of the-physical result of the person’s | «act, whatever the likelihood of that result happening from the conduct; or (2) the knowledge that that result is substantially certain to follow from the conduct, whatever the person’s desire may be as to that result. Id. Thus, intent has reference to the consequences o'f an act rather than to the act itself. Id.
We now consider, how the assault pay provision has been applied in specific cases. These cases generally fall into one of two factual scenarios. In the first scenario, the teacher is injured as a result of a student’s’ action directed. toward the teacher or another person. In the second scenario, the teacher is injured as a result of a student’s action not directed.toward the teacher or another person. The Louisiana First and Third Circuits have awarded assault pay in the first scenario. The Fourth Circuit has considered both scenarios, awarding assault pay in the first, and declining assault pay in the second. Other circuits have not considered the second scenario.
In Boseman, supra, a first scenario case, the Fourth Circuit found a teacher was entitled to assault pay because, while attempting to break up a fight between two students, she was injured when she was the intended target of a battery. Gloria King Boseinan, a high school teacher, was attempting to break up a fight between two female students when two other bystanding students, who had been uninvolved, specifically targeted their teacher. Boseman, 727 So.2d at 1195. One of these students punched 'Ms. Boseman “violently and forcefully, in the back.” Id. The other student repeatedly beat Ms. Boseman and threw her against a wooden bookcase and a bulletin board. Id. Ms. Boseman sustained several injuries. Id.
After Ms. Boseman sought and was denied assault pay, shé filed suit seeking these benefits, which the district court awarded lier. Boseman, supra. On appeal, the School Board argued Ms. Bose-man was not' entitled to assault pay, but was Inonly entitled to benefits under the physical contact provision. The Fourth Circuit affirmed, finding that both provisions applied. Id. at 1197. The court reasoned:
.Given the fact that the record indicates that the attack on Ms. Boseman continued for some unspecified period, of time, the, necessary intent appears to be present, even without resorting to the doctrine of transferred intent. This was not a situation where a teacher simply came between two students who were fighting and got caught in the crossfire. The students who battered Ms. Bose-man were not even involved in the-initial fight, but were watching from the sidelines. When they decided to enter [the] fray, they did not simply push Ms. Bose- *412 man out of the -way; they hit her and pushed .her into classroom' furniture. Ms. Boseman suffered serious injury at the hands of the students. Given those facts, the trial court’s finding ¡that Ms. Boseman suffered a battery at the hands .of her students is not manifestly erroneous.

Id.

Ms. Boseman was awarded assault pay because she was the intended target of a battery. Similarly, in another first scenario case, the First Circuit found a teacher is entitled to assault pay even if he- is the unintended target of a battery: In Stoshak v. E. Baton Rouge Parish Sch. Bd., 06-852 (La.App. 1 Cir. 2/21/07), 959 So.2d 996, 997, writ denied, 07-633 (La.5/11/07), 955 So.2d 1281, John Stoshak, a high school teacher, was attempting to break up a fight, between two male students when one of the students’ punches intended for the other struck Mr. Stoshak in the back of the head, causing him to fall to the ground and lose consciousness. Id. After the School Board denied Mr. Stoshak assault pay, he filed suit seeking these benefits. Id. The parties filed cross-motions for summary judgment. Id. The district court granted the School Board’s motion, concluding Mr. Stoshak’s injuries fell under the physical contact provision and dismissed his claim. Id. at 998. On appeal, the First Circuit reversed. Id. at 1000.
In reaching this conclusion, the appellate court determined that Mr. Stoshak suffered a battery by a student under the doctrine of transferred intent:
|]nIt. is undisputed that the student who hit Mr. Stoshak committed a battery because he intended the physical act of throwing the punch, and he intended to injure another person by throwing the punch. Under the doctrine of transferred intent, the student who hit Mr. Stoshak while attempting to hit the other student is deemed to have . had the requisite intent to commit a battery on Mr. Stoshak. Therefore, because Mr. Stoshak’s injuries resulted . from a battery by a student, the Board was obligated to provide him with [assault pay].
Stoshak at 1000.
Although Mr. Stoshak was clearly injured- “while providing physical assistance to--a student to prevent danger or risk of injury to the student,” the injury was undoubtedly inflicted by -a battery. Thus, the First Circuit opined the physical contact provision would “apply ■ to injuries a teacher sustains when coming to the aid of a student that result from physical contacts ■ that do not rise to the level of an assault or battery.” Id.
Such a ¡scenario arose in the following Fourth Circuit case, the second scenario case, .where a teachex-’s injury was caused by a student’s act of which no one was the target while the teacher was attempting to defuse a conflict between two students. Iris Garnier, an elementary special education teacher, was attempting to physically restrain a female student who refused to stop throwing pencils at a male student. Garnier v. New Orleans Pub. Schs., 01-860 (La.App. 4 Cir. 7/31/02), 824 So.2d 1222, 1224, writ denied, 02-2290 (La.11/15/02), 829 So.2d 433. The female student, who was “larger” at 5'8" or 5'9", “jerked away” from Ms. Garnier, causing the teacher to fall backwards, sustaining injuries. Id. Distinguishing these facts from Boseman, thé Fourth Circuit found that because Ms. Garnier was injured as a result of her “intervention” in the conflict, and not as a result óf an intentional act targeting her or anyone else, this scenario fell within the scope of the physical contact provision, not the assault pay provision. Id. at 1236.
*413 | n Conversely, though not in the context of breaking up a fight between students, the Third Circuit has found that a student’s resistance against a teacher’s efforts to restrain the student, which causes the teacher to sustain an injury, amounts to a battery for purposes of assault pay. See Stroh v. Calcasieu Parish Sch. Bd., 07-1238 (La.App. 3 Cir. 3/5/08), 978 So.2d 1114, In that case, a first scenario case, a third grade male student arrived to Carolyn Stroh’s classroom late and became disruptive. Id. at 1117. After refusing Ms. Stroh’s demands to be quiet and sit down, the student “began fighting with her and forcefully, resisting her efforts to bring him out of the classroom and down the hall.” Id. In the hall, the, student “was pulling and leaning back as Ms. Stroh tried to lead him ... to the principal’s office.” Id. Her feet became tangled with the student’s and she fell to the ground resulting in injury. Id. at 1115. The district court was “convinced that — more probably [sic] than not the intentional resistance that was given by this child caused this incident to happen.” Id. at 1116. The district court noted that “[t]he child should have known that T am pulling this teacher down with the potential she is going to fall down on me or fall down with me.’ ” Id. at 1117. The court concluded that this constituted a battery entitling Ms. Stroh to assault pay, and the Third Circuit agreed.. Id.
We now turn to the facts of this case.
At trial in August of 2014, Ms. Neathamer described what occurred twenty-seven years earlier on February 25, 1987. She stated that due to inclement weather that day, P.E. class was held inside the gymnasium. At the start of the second period class, sixty-three students filed in and found their assigned seats in the bleachers. As Ms. Neathamer began to call roll, she heard profanity becoming progressively louder. One student, Nicole Singleton, was screaming at another, Erika Jackson. Ms. Singleton, who was sixteen or seventeen and weighed about h2180 pounds, “had been around the block.” Ms. Jackson, who was twelve or thirteen and was also a “big girl,” was not a “problem kid.” Ms. Neathamer, approximately 5'3" and 116 pounds at the time, demanded the two girls come down out of the bleachers to the gym floor. Ms. Jackson reached the floor first. Ms. Singleton, visibly angry and now threatening violence, came “bounding down” the bleachers. When she reached the second-to-last bleacher, she launched herself onto the gym floor and stormed toward Ms. Jackson. Attempting to defuse the situation, Ms. Neathamer positioned herself between the two girls. Ms. Singleton shoved Ms. Neathamer in the shoulder; Ms. Jackson shoved Ms. Neathamer from behind. Ms. Neathamer shouted to another student, Dayana Martinez, to go get help from administration. Ms. Martinez dashed out of the gym to the office.
Meanwhile, Ms. Jackson was “swinging her arms;” and Ms. Singleton was “flailing away” with a closed fist. Ms. Neathamer grabbed Ms. Singleton, clasping her arms around her. Attempting to loose herself from Ms. Neathamer’s grasp, Ms. Singleton began twisting from - side . to1 side, swinging her elbows back and forth, striking Ms.- Neathamer several times. Ms. Jackson • also landed several blows upon Ms. Neathamer while indiscriminately swinging her fists. In Ms. Singleton’s sus-táiiied effort to free herself from ’ Ms. Neathamer’s grasp, she “started sort of lunging back.”' She continued this until the last time she “flung backwards,” Ms. Neathamer “lost [her] stance” and fell'to the floor in a seated position, striking her tailbone on the floor. Ms. Singleton fell onto her teacher’s chest, immediately *414 forced her way up, and continued to pursue Ms. Jackson.
Ms. Neathamer described the pain when she made contact with the floor as “like somebody had shoved a poker from my tailbone to the base of my skull. It was hot. It was burning. It was just bad. It was terrible. I have never ever experienced pain as great.”
11sThat same day, Ms. Neathamer completed a report of the incident, in which she. described the incident as follows: “I was breaking up á fight between two students, when one of the students fell on top of me slamming me to the floor.”
By February 27, 1987 the pain had not subsided, so Ms. Neathamer reported to Dr. John Cazale, an orthopedist who found she displayed “left-sided sacroiliac inflammation along with lumbar strain.” Ms. Neathamer explained how she sustained her injury, which Dr. Cazale reflected in his report as follows: “[Ms. Neathamer injured] her back a couple of days ago when she was trying to break up a fight at school between a couple of the students and evidently one of the students fell against her knocking her to the ground.”
Ms. Neathamer completed another report on March 23, 1987, in which she offered two descriptions of how she sustained her injury. She first stated: “I was breaking up a fight between two students when one of the students fell on top of me slamming, me to the floor. The fight occurred in the gym.” .She also stated: “I was breaking up a fight between [two students]. It required Coach Bourne, Mrs. Romano,-several boys, and myself before we were able to pull them apart. When they were pulled apart, [Ms. Singleton] fell onto me slamming me into .the floor.”
On May 2, 1988, Ms. Neathamer was seen by Dr. Gordon Nutik, an orthopedic surgeon who had been retained by the School Board’s insurer to conduct an independent medical examination. She saw Dr. Nutik several times over the next two years. As he testified in his deposition on July 23, 2014, Dr. Nutik’s reports reflected that Ms. Neathamer described she was injured when, “while separating two girls who were fighting at school ... she took hold of one of the girls and ... when [the] two children popped apart, she fell and one of the girls fell onto her chest.” Dr. Nutik added: “It doesn’t sound like [there was] an active type of force ... that the girl did to her, just that they separated and that she fell.” 114He further noted that if Ms. Neathamer had “said to me the girl did something actively to her to make her fall or, ... did something to exacerbate the problem, then that would have been written” in his reports. It was not; and Dr. Nutik opined that Ms. Neathamer “was trying to separate two people and there was this sudden separation of the people, which probably caused her to lose balance and potentially one of the girls to lose balance, so she ended up falling and one of the girls fell on her as part of the incident.”
After two years of intense physical therapy, Ms. Neathamer’s pain, while improved, was not fully resolved. On April 10, 1989, Ms. Neathamer attempted to resume her teaching career, accepting a temporary homebound teaching position with the Jefferson Parish School Board, where she worked through the end of the school year. Shortly after accepting this position, on April 27, 1989, Ms. Neathamer began seeing Dr. Edna Doyle, a physiatrist[4] who treated her until 2001. At her first visit, *415 Ms, Neathamer explained how she sustained her injury, which Dr. Doyle reflected in her report as follows:
[Ms. Neathamer] was- injured ... while trying to separate two girls who- were fighting. One weighing 180 pounds threw herself backward against the patient to make her let go. She did let go ' and landed in a sitting position on the • gym floor which was cement covered with tile. The girl then landed on top of her and pushed off against her to stand up.
In a 1994 deposition, Ms. Neathamer testified:
[Ms. Singleton], when she couldn’t-get out of my grip, threw herself up in the air, up back on me a couple of times. And then the last time she threw herself up in the air, she threw me down to the ground and landed on my chest.' So, she threw herself back up against me and I went down in a seated position and she followed down and sat on my chest. And then she pushed off of me and went after the other girl again.
|15As the foregoing makes clear, descriptions of the incident are inconsistent and change over time. It is the prerogative of the district court, sitting as the finder of fact, to resolve such inconsistent and conflicting evidence. So long as there exists a reasonable factual basis for the court’s finding in the record, that finding cannot be manifestly erroneous or clearly wrong. In this case, only one eyewitness to the incident testified at trial: Ms. Neathamer herself. Her testimony, Dr. Doyle’s report, and Ms. Neathamer’s 1994 deposition testimony suggest that Ms. Neathamer’s collision with the floor was the result of Ms. Singleton’s deliberate act of throwing herself against her teacher in an effort to free herself from' her. teacher’s grasp. This is a reasonable factual basis for the district court to classify this as a first scenario case and find that Ms. Neathamer’s injury was the result of a battery. Therefore, the district‘court’s decision to resolve the inconsistent evidence in favor of Ms. Neathamer was not clearly wrong. As a result, we cannot find the district court manifestly erred in finding that Ms. Neathamer’s injury was'the result of a battery and that she was entitled to assault pay. 'This argument is without merit. ’
■ The School Board next argues that the district court erred in calculating the amount of assault pay when it found that Ms. Neathamer’s entitlement to assault pay ceased on December 31, 1992. The School Board ■ submits that Ms. Neathamer’s .entitlement to, assault pay terminated upon, the date of her retire-ipent, December 1,,1989. Upon review of the pertinent statute,, we agree with the School Board.
On February 25, 1987, La. R.S. 17:1201(0(2) provided:
.The sick leave authorized by this Subsection .shall be in addition to all other sick leave authorized in this Section, provided that additional sick leave earned during the peripd of disability as a résult of such assault and battery shall not be accumulated from year to year, nor shall such additional sick leave be compensated for at death or 11(iretirement or compensated for in any other manner except as authorized in this Subsection.
From this, we conclude that Ms. Neath-amer is not entitled to assault pay beyond the date of her retirement, December 1, 1989. To the extent the district court found otherwise, the court erred as a matter of law. The calculation of assault pay is limited'to the period between February 25,1987 and December 1,1989.
*416 To calculate assault pay during this period, we turn . to La. R.S. 17:1201(D)(1), which provided in 1987:
Any teacher or superintendent in the public schools who is injured or disabled while acting in his official capacity shall be entitled to weekly wage benefits under-the worker’s compensation law of the1 state’ of Louisiana and/or to, sick leave benefits -under Subpart B of Part X of this Chapter, at his option, but in no event shall such benefits exceed the total amount of the regular salary the teacher or superintendent was receiving at the time the injury or disability occurred.
Interpreting this provision, the Louisiana Fourth Circuit has held that' a public school teacher who is injured on the job as a result of a battery “is'entitled to receive assault pay‘benefits to supplement her workers’ compensation benefits as’ long as the total of these benefits does not exceed her pre-injury salary and/or earnings.” Anderson v. Orleans Parish Sch. Bd., 00-909 (La.App. 4 Cir. 8/1/01), 792 So.2d 943, 949.[5] The injured teacher is owed “the difference between her pre-injury salary and her workers’ compensation benefits, and no more.” Id.
Therefore, in this case, the assault pay owed Ms. Neathamer is the difference between what Ms. Neathamer would have earned during the relevant time period had she not been injured arid what she actually received in worker’s compensation benefits and/or wages during that same period.
117According to the parties’ joint stipulation filed on September 8, 2014 before rendition of judgment, Ms. Neathamer was receiving an annual salary of $22,171.50 at the time of her injury. In addition to that, she was receiving an annual wage of $792.00as dance team coach and an annual wage of $1,080.00 as softball coach. The stipulation further reflects that Ms. Neath-amer is not owed wages as dance team coach for the 1986-1987 school year nor as softball coach for the 1989-1990 school year (through December 1, 1989). Additionally, Ms. Neathamer concedes that she is owed $6,466.55 of her salary for the 1986-1987 school year. Therefore, had Ms. Neathamer not been injured, she would have earned $65,663.68 during the relevant time period.
As to her worker’s compensation benefits, the stipulation reflects that Ms. Neatliamer in fact received $32,984.94 in worker’s compensation benefits until April 10, 1989. She also received $4,074.59 in wages for the temporary homebound teaching position she held in the spring of Í989. Between April 10,1989 and December 1, 1989, a span of thirty-three weeks, Ms. Neathamer was due $393.58 per week, or $12,988.15, in worker’s compensation benefits. The record indicates that she subsequently received this amount, plus some, pursuant to a settlement agreement reached on December 7,1994.[6] Therefore, Ms. Neathamer received a total of $50,047.68 in benefits and wages for the relevant time period.
The difference between $50,047.68 and $65,663.68 is $15,616.00. This is the amount of assault pay owed Ms. Neathamer.
*417 DECREE
The district court’s judgment finding the Jefferson Parish School Board liable to Susan Neathamer for assault pay is affirmed. The court’s judgment | ^awarding Ms. Neathamer assault pay in the amount-of $68,248.47 plus costs and legal interest from date of judicial demand is vacated. Ms. Neathamer is hereby awarded assault pay in the amount of $15,616.00 plus costs and legal interest from date of judicial demand.

AFFIRMED IN PART; VACATED IN PART; RENDERED

. In addition to several pre-trial supervisory writ applications, this Court heard an appeal in this case, wherein this Court reversed the district court’s grant .of summary judgment dismissing the Louisiana Department of Education from the case. See Manders v. Singleton, 558 So.2d 772 (La.App. 5 Cir. 3/14/90).

. 1 We do not-consider whether Ms. Neathamer was the victim of assault since there was in fact physical contact. Assault does not require physical contact. Boone v. Reese, 04-979 (La.App. 3 Cir. 12/8/04), 889 So.2d 435, 440; see also State v. Dauzat, 392 So.2d 393, 396, n. 3 (La.1980). In criminal law, assault is defined as "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.” La. R.S. 14:36.

. Criminal law defines battery in pertinent part as "the intentional use of force or violence upon the person of another[.]” La. R.S. 14:33.

. A physiatrist is a medical doctor specializing in physical medicine, rehabilitation, and pain management.

. The version of La. R.S. 17:1201 (D)(1) applied by the Anderson court was substantively the same as it was in 1987.

. In this settlement agreement, among other things, the Jefferson Parish School Board agreed to pay Ms. Neathamer $32,116.65 in worker’s compensation benefits, in addition to the $32,984.94 she had already received through April 10, 1989.