SUSAN M. CHEHARDY, Chief Judge.
12This appeal stems from a dispute between owners of a corporation with respect to percentages of stock each owned in River Parish Contractors, Inc. (“RPC”). The district court previously resolved this dispute by way of summary judgment in favor of appellee, Francis W. Guidry, Jr., and against appellant, Richard Allan Sa-voie. On appeal, however, this Court found genuine issues of material fact precluded summary judgment, reversed the district court, and- remanded the matter for trial. See Guidry v. Savoie, 13-164 (La.App. 5 Cir. 09/04/13), 125 So.3d 1162. After a bench trial, the district court rendered judgment again in favor of Mr. Gui-dry. Mr. Savoie now brings this case back before this Court on a second appeal.
FACTS AND PROCEDURAL HISTORY
RPC, an industrial contractor, was incorporated in 2001 for the purpose of purchasing assets of another company, Highland Industrial Services, Inc. (“HISI”). On September 28, 2001, articles of incorporation were filed with ■ the Secretary of State listing Mr. Guidry and Mr. Savoie as the incorporators and directors. Also on | ¡¡September 28, 2001, an act of sale was executed in which HISI agreed to sell specified assets, to RPC.
Neither the articles of incorporation nor any other founding documents establish the apportionment of ownership of RPC. Mr. Guidry contends that since RPC’s inception, he has owned 60 percent of the company,, with the remaining 40 percent divided equally between Mr. Savoie and Chad Bourgeois. Mr.. Bourgeois likewise maintains that this has always been the apportionment of RPC’s ownership. Mr. Savoie, on the other hand, contends that he and Mr. Guidry equally co-own RPC.
In the months preceding the incorporation of RPC, Mr. Guidry, Mr: Savoie, and Mr. Bourgeois were employed by Pipe Works, Inc., the parent company of HISI. Mr. Guidry and Mr. Savoie also held ownership interests in PipeWorks. In' the summer of 2001, PipeWorks was struggling and its ■ dismal economic outlook forced it to sell parts of its business. • Indeed, Mr. Savoie testified that he did not think PipeWorks was “heading in the right direction” and he was ready to get out. Seeing an opportunity, Mr. Guidry, Mr. Savoie, and. Mr. Bourgeois began discussing the option of starting a company and purchasing business from PipeWorks. According to Mr. Guidry, he asked Mr. Sa-voie and Mr. Bourgeois “to come on board” with him. Mr. Guidry believed that Mr. Savoie,.'a “sales guy,” and Mr. Bourgeois, a “numbers guy,” would be helpful to the new company. He offered each a 20 percent ownership interest. According to Mr. Guidry, Mr. Savoie and Mr. Bourgeois both accepted this offer. Mr. Bourgeois similarly testified, further ádd- *1188 ing that he and Mr. Savoie had then- own discussions in which they both understood they would own 20 percent each.
On July 24, 2001, there was a preliminary agreement to sell all of the stock of HISI to “Francis Guidry, Jr. (or his assigns).” However, around September 15, U2001, in part out of concern that Mr. Guidry may have been assuming unknown liabilities, this sale did not go through. Instead, it became a sale of assets, which HISI sold to RPC on September 28, 2001.
During the discussions prior to the sale, Mr.' Bourgeois’ participation was kept undisclosed because, as Mr. Guidry explained: “We just didn’t want the people at PipeWorks to know that Chad was leaving to come work for us.” Mr. Bourgeois added that they did not want it to “affect the sale.” It was for this reason that Mr. Bourgeois was not listed as an incorpo-rator in-RPC’s articles of-incorporation. Mr. Bourgeois was similarly omitted as-a guarantor on a $900,000.00 line of credit RPC obtained from the bank on October 11, 2001. Mr, Guidry and Mr. Savoie were the in solido guarantors of this loan. Mr. Savoie explained he would have only exposed himself to this liability if he had at least a 50-percdnt stake in the company. Mr. Bourgeois testified that he signed on as a guarantor later, in or around 2003.
After RPC had been operating for nearly a month, Mr. Bourgeois requested documentation to memorialize his ownership interest in the company.- So, a letter dated October 24, 2001 was drafted in which Mr. Guidry, on behalf of RPC, offered Mr. Bourgeois employment with RPC at a specified salary and a 20-percent ownership interest.
Anthony Nobilé, an attorney who has represented Mr. Guidry for many years and who was involved during the formative stages of RPC, testified that the ownership of RPC was divided 60-20-20 from the start. Mr. Nobile drafted the act of sale between HISI and RPC, facilitated the incorporation of RPC, and drafted RPC’s initial organizational resolutions, which set forth the “steps to commence operation of the corporation.” One draft of these resolutions, which was not signed by Mr. Gui-dry, Mr. Savoie, or Mr. Bourgeois, includes handwritten notations by | ¡¡Mr. Nobile reflecting ownership of the company as divided amongst Mr. Guidry, Mr. Savoie, and Mr. Bourgeois in respective shares of 60 percent, 20 percent, and 20 percent. Mr. Nobile could not recall when these notations were made,, but suggested it was likely not later than March 5, 2002, the date his computer system reflected the document had last been modified.
In connection with RPC’s 2001 federal income tax return, Mr. Guidry, Mr. Savoie, and Mr. Bourgeois each received a Schedule K-l form, which delineates each shareholder’s share of income, credits, deductions, etc. Each owner’s K-l set forth his respective ownership interest in RPC. Mr. Guidry’s indicated 60 percent, while Mr. Savoie’s and Mr. Bourgeois’ indicated 20 percent each. Mr. Savoie acknowledged that although he personally never received his K-l, his CPA .did and advised him the next day that it indicated he had a 20-percent ownership interest in RPC. Mr. Savoie admitted he did not voice an objection about his 20-percent interest to either Mr. Guidry or Mr. Bourgeois. Indeed, both Mr. Guidry and Mr. Bourgeois testified that Mr. Savoie never objected to his 20-percent ownership interest after receiving his K-l. At trial, Mr. Savoie explained that he did not object because he was “busy.”[1]
*1189 Mr. Savoie’s 20-percent ownership interest is additionally reflected in his 2001 personal income tax return which includes his 20-percent pro rata share of the company’s losses from his Schedule K-l. Fur-thermorej RPC’s 2001 state income tax return likewise reflects Mr. Guidry’s, Mr. Savoie’s, and Mr. Bourgeois.’ ownership interests in RPC as 60 percent, 20 percent, and 20 percent, respectively. '
Sometime after 2002, as RPC continued to grow and become more profitable, Mr. Bourgeois explained that he and Mr. Sa-voie started discussing their |fimutual desire to acquire greater ownership interests in the company. In or around October 2003, it was agreed that the three owners would be compensated with equal salaries. This prompted Mr. Bourgeois and Mr. Sa-voie to seek equal ownership interests, which they proposed to Mr. Guidry and which Mr. Guidry flatly rejected. The next discussion of altering the ownership interests occurred several years later in 2008 when the three owners openly discussed an increase of Mr. Bourgeois’ and Mr. Savoie’s interest from 20 percent to 25 percent, and a corresponding reduction in Mr. Guidry’s interest from 60 to 50 percent. Mr. Nobile prepared documents for this purpose, but Mr. Savoie refused to sign these documents, claiming he owned 50 percent. Both Mr. Guidry and Mr. Bourgeois testified that this was the first time they learned of Mr. Savoie’s contention that he owned 50 percent of the company.
In 2010, discussions with Todd Villarru-bia, a tax and estate attorney, were held for the purpose of establishing continuity for the corporation in the event of an owner’s death or other unforeseen events. During these discussions, the proposed 50-25-25 division of ownership again surfaced. ■ Mr. Savoie again refused to sign these documents because he continued to maintain that he owned 50 percent.
Following failed attempts to resolve this dispute amicably, on November 9, 2010, Mr. Guidry filed a petition for declaratory judgment against Mr. Savoie and. RPC, seeking to have the division of ownership interests in RPC declared 60-20-20. In response, Mr. Savoie filed his own petition for declaratory judgment seeking to have the division of ownership interests in RPC declared 50-50. The two suits were consolidated.
Mr. Guidry moved' for summary judgment and on August 7, 2012, the district court granted this motion, finding it was beyond dispute that Mr. Guidry, Mr. Sa-voie, and Mr. Bourgeois agreed to divide the ownership of RPC into ^respective shares of 60 percent, 20 percent, and 20 percent.., On appeal, this Court found genuine issues of material fact remained, reversed the district court, and remanded the matter for trial. See Guidry v. Savoie, 13-164 (La.App. 5 Cir. 09/04/13), 125 So.3d 1162. Following a. bench trial, the district court issued its judgment and extensive reasons therefor on March 31, 2015. The court found: “[T]he vast majority of the relevant and corroborating evidence submitted in this matter clearly reflects that Guidry, Savoie and Bourgeois intended and agreed to a division' of stock as follows: Guidry owned 60 percent, Savoie owried 20 percent, arid Bourgeois owned 20 percent of RPC.” Mr. Savoie appeals from this ruling.
ASSIGNMENTS OF ERROR
Mr. Savoie assigns the following errors on appeal: (1) the district' court erred by applying La. C.C.- art. 1846, rather than the partiés’ intent, to determine the ownership of the corporation; (2) the district *1190 court erred by finding that Mr. Guidry-satisfied his burden of proving he-was a majority owner or that he intended to be a majority owner at the time RPC was incorporated; (3) the district court erred in excluding the testimony of Oscar LaFleur; (4)the district court erred in excluding the testimony of Robert Beter.
DISCUSSION

Assignment of Error No. One

In Mr. Savoie’s first assignment of error, he argues that the district court erred in applying La. C.C. art. 1846 in determining the apportionment of RPC’s ownership. Mr. Savoie raised this identical argument in his first appeal, which this Court rejected, holding that “the trial court did not err in applying Art. 1846 to determine the burden of proof.” Guidry v. Savoie, 13-164 (La.App. 6 Cir. 09/04/13), 126 So.3d 1162, 1167. Then, on remand, in accordance with this Court’s ruling, the district court again applied La. C.C. art. 1846, explaining: |s“[T]he unique facts and circumstances of this case require the use of Art. 1846 because an obligation, the alleged oral contract which divided ownership between Guidry, Savoie, and Bourgeois, is at the heart of this ownership dispute.” Mr, Savoie now seeks review of this issue again.
We decline to reconsider this issue on Mr. Savoie’s second appeal. Under the law of the case doctrine, “a court should not reopen issues decided in earlier stages of the same litigation.” Agostini v. Felton, 521 U.S. 203, 236, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997). Pursuant to this discretionary doctrine, courts of appeal generally refuse to reconsider their own rulings of law on a subsequent appeal in the same case. Pumphrey v. City of New Orleans, 05-979 (La.04/04/06), 925 So.2d 1202, 1207. Indeed, the doctrine “applies to parties who have previously had the identical question presented and decided by an appellate court.” Ave. Plaza, L.L.C. v. Falgoust, 96-0173 (La.07/02/96), 676 So.2d 1077, 1079; see also Keller v. Thompson, 134 So.2d 395, 398 (La.App. 3 Cir.1961) (“When the same issue is re-urged upon the second appeal as was decided on the first appeal, the law of the case doctrine is nevertheless applicable even though, in the interval, the personnel of the appellate court has changed, or a different panel hears the second appeal, or appellate jurisdiction of the litigation is transferred to a successor tribunal of equivalent appellate function.”).
Therefore, under the law of the case, we decline to reconsider our previous ruling on this issue.

Assignment of Error No. Two

In his second assignment of error, Mr. Savoie argues that the district court erred in granting declaratory relief by concluding that ownership of RPC was divided 60-20-20.
IflOn review, we consider a district court’s ruling on a petition for declaratory judgment under the abuse of discretion standard. Connick v. Shepherd, 15-582 (La.App. 5 Cir. 09/24/15), 176 So.3d 1129, 1132, writ denied, 15-1763 (La.9/30/15), 178 So.3d 575.
In resolving disputes of corporate ownership, it is well settled that a stock certificate is prima facie evidence of ownership, but is distinguished from actual ownership, which is to be determined from all the facts and circumstances of a case. Ackel v. Ackel, 595 So.2d 739, 741 (La.App. 5 Cir.1992); Tedeton v. Tedeton, 48,840 (La.App. 2 Cir. 03/12/14), 137 So.3d 686, 690; Hartnett v. LGD Props., Inc., 99-2539 (La.App. 4 Cir. 05/03/00), 767 So.2d 88, 92, writ denied, 00-2626 (La.11/17/00), 774 So.3d 976.
*1191 For example, despite the fact that 100 percent, of stock certificates had been issued to one co-owner of a closely-held corporation, other various facts and circumstances led the First Circuit to conclude that the corporation was equally co-owned. See Fireplace Shop, Inc. v. Fireplace Shop of Lafayette, Inc., 400 So.2d 702 (La.App. 1 Cir.1981). In that case, Willard Dugas and Phillip Garrett, who were co-owners of a corporation in Baton Rouge, entered into a pre-incorporatiqn agreement to incorporate a second business in Lafayette. Because of a disagreement over ownership interests, this agreement was never signed, but the plans, for the business proceeded. The Baton Rouge corporation funded the initial capitalization for the Lafayette business. Mr. Dugas made several trips to Lafayette contacting builders and suppliers, sold several products on behalf of the planned corporation, and was instrumental in obtaining a warehouse for the business. Meanwhile, Mr. Garrett, 'without Mr. Dugas’ knowledge, incorporated the Lafayette business and issued 100 percent of the stock to himself. Unaware of Mr. Garrett’s actions, Mr. Du-gas continued to play an active part in the corporation. |inHe directed management, personally guaranteed both a $20,000.00 loan for the new corporation’s working capital and an account with its major supplier. On the advice of them certified public accountant, both men signed a corporate tax form designating each as a 50-percent owner of the corporation. The management of the Lafayette corporation gradually passed to Mr. Garrett with Mr. Dugas handling the Baton Rouge location and a New Orleans location that the two had incorporated on a 50-50 basis. Relations between the two became strained and for the first time Mr. Garrett informed Mr. Dugas that he had no legal interest in the Lafayette corporation. Mr. Dugas then filed suit seeking to be named a 50-per-cent owner of the Lafayette corporation and requesting to have the corporation put into receivership because of Mr. Garrett’s ultra vires acts and fraud. Fireplace Shop, 400 So.2d at 703.
The district court declared Mr. Dugas a 50-percent owner of the Lafayetté corporation and the appellate court affirmed. Fireplace Shop, supra at 704. Despite conflicting testimony concerning Mr. Du-gas’ participation in the incorporation and management of the corporation, in light of the above facts and:the testimony of several employees that they believed the business was co-owned equally,, the First Circuit concluded,that the district court had not manifestly erred in finding the Lafayette corporation was equally co-owned. Id. ■
In the instant case, stock certificates were not issued and a division of ownership was not established in the articles of incorporation. Consequently,' the district court properly considered the totality of the facts and circumstances in determining the division of ownership of RPC. In conducting this factual inquiry, the court utilized the burden of proof required to prove the existence of an oral contract with a “price or value in excess of five hundred dollars.” La. C.C. art. 1846. Such a contract “must be proved by at least one witness and other | n corroborating circumstances.” Id. The plaintiff himself may serve as the one witness to establish the existence of the oral contract, but the “other corroborating circumstances,” which need only be general in nature, must come from a source other than the plaintiff. Suite v. Lafayette City-Parish Consol. Gov’t, 04-1459 (La.04/12/05), 907 So.2d 37, 58. For instance, in Suite, the Louisiana Supreme Court found that the plaintiff had failed, as a matter of law, to establish the existence of an oral contract under La. C.C. art; *1192 1846 where the only proof offered by the plaintiff consisted of .his own uncorroborated deposition testimony. Id. Whether there is sufficient evidence to establish an oral contract under La. C.C, art. 1846 is a finding of fact that will not be overturned unless it is manifestly erroneous or clearly wrong. Read v. Willwoods Cmty., 14-1475 (La.3/17/15), 165 So.3d 883, 888.
Under this standard of review, to reverse a trial court’s factual findings, the'appellate court must: (1) find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) determine that the record establishes the finding is clearly’wrong or manifestly erroneous, Neathamer v. Singleton, 15-411 (La.App. 5 Cir. 12/23/15), 182 So.3d 406, 410, writ denied, 16-239 (La.4/4/16), 190 So.3d 1206. Thus, an appellate court’s task is not to determine whether the fact-finder was right or wrong, but whether the factfinder’s conclusion was reasonable. See id. If the conclusion is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. Indeed, even where an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. Thus, where two | ^permissible views of the evidence exist,, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
With this standard of review in mind, we turn to the record at hand, which, in our view, contains a reasonable factual basis for the district court’s finding that ’Mr. Guidry, Mr. Savoie, and Mr. Bourgeois agreed to divide the ownership of RPC into respective shares of 60 percent, 20 percent, and 20 percent. Mr. Guidry’s testimony was corroborated by the testimony of Mr. Bourgeois and Mr. Nobile as well as by documentary evidence. The handwritten notes of Mr. No-bile reflect the 60-20-20 division; the October 24, 2001 letter to Mr. Bourgeois offered' him a 20-percent interest in the company; both RPC’s 2001 federal and state income tax returns reflect the 60-20-20 division; and Mr. Savoie’s 2001 personal federal income tax return reflects his 20-percent interest in RPC.
In addition, Mr. Savoie even admitted at trial that he knew RPC’s federal return indicated he had a 20-percent interest, but he chose not to contest it. This admission is inconsistent with Mr. Savoie’s position throughout this litigation that he had always believed he and Mr. Guidry equally co-owned RPC. Further, the only evidence offered in support of Mr. Savoie’s position was his own uncorroborated testimony.
Upon our review, we find the record contains a reasonable factual basis for the court’s finding and does not establish this finding was clearly wrong. The court did not manifestly err in accepting Mr. Gui-dry’s account and rejecting Mr. Savoie’s. We therefore conclude that the district court did not abuse its discretion in granting Mr. Guidry declaratory relief. This ' assignment of error is without merit.
| isAssignments of Error Nos. Three and Four
In his third 'and fourth assignments of error, Mr. Savoie argues that the district court erred in excluding the testimony of Oscar LaFleur and Robert Beter for discovery violations,
Discovery in this case began on or about February 11, 2041, when Mr. Guidry propounded his first discovery request to Mr. *1193 Savoie seeking the identity of all witnesses he intended to call at trial. Mr. Savoie responded on or about June 30, 2011, listing those witnesses he intended to call. Oscar LaFleur and Robert Beter were not included in this list.
Discovery continued until the district court granted Mr. Guidry’s motion for summary judgment on April 7, 2012. Following this Court’s' reversal and remand for trial, discovery resumed. Then, on March 25, 2014, the court issued a scheduling order setting a trial date and addressing various other housekeeping matters. This included the directive that both parties “shall complete discovery before May 30, 3014” and that “Final Witness Lists by all parties must be filed of record and exchanged no later than JUNE 16, 2014. NO EXCEPTIONS.” (Emphasis original).
On May 30, 2014, Mr. Guidry’s counsel sent an e-mail to opposing counsel advising him of supplements to their witness list: two may-call witnesses, Todd Villarrubia and Jim Besselman, and one witness for purposes of document authentication.[2] Mr. Savoie’s counsel replied via e-mail later that day likewise advising opposing counsel of supplements to their witness list: seven witnesses. Six of these witnesses, including Mr. LaFleur and Mr. Beter, were new.
Two weeks later, on June 13, 2014, counsel for Mr. Savoie filed his final pre-trial witness list, which included Mr. LaFleur and Mr; Beter. Mr.: Guidry | 14claimed he had not been provided with this final list and had obtained it from the Clerk of Court upon his request. On June 19,2014, Mr. Guidry filed a. motion to strike the six new witnesses due to Mr. Savoie’s failure to comply with the court’s scheduling order of March 25, 2014.[3]
On June 24, 2014, the first day of trial, the court heard and granted the motion to strike the six witnesses. The court explained: “I just find it rather incredible that these witnesses were disclosed on such a late date .,. I think it would be a needless burden on the plaintiff to have to squeeze all those depositions into a time when certainly these people ... should have been disclosed much, much earlier.” Mr. Savoie- objected and the court later permitted the testimony of Mr. LaFleur and Mr. Beter to be proffered into the record. -
The. issue presented here is the supplementation of discovery with regard to witnesses. This is governed by La. C.C.P. art. 1428(1), which imposes a continuing affirmative duty on a party to timely supplement discovery responses related to witnesses and experts. Chapman v. Reg’l Transit Auth./TSMEL, 95-2620 (La.App. 4 Cir. 10/02/96), 681 So.2d 1301, 1305. The article imposes a duty on parties to- seasonably supplement' 'discovery responses concerning any questions directly addressed to the identity and location of persons having knowledge of discoverable matters. Id. When a party discovers a new witness with knowledge of discoverable matters, he is required to make this information known to the adverse party. Id. This rule is based on the fact that all parties to the litigation need to know both the identity of the witnesses and the extent of their knowledge. Id.
*1194 A party’s failure to uphold this duty to timely supplement discovery responses may result in sanctions, such as excluding the testimony from a witness 11snot properly disclosed to the adverse party. See Chapman, supra. In deciding whether to impose such a sanction, the trial court, as in all matters of pre-trial discovery, is afforded vast discretion, and its rulings will not be overturned absent a clear abuse of that discretion. See Gauthier v. Harmony Constr., LLC, 13-269 (La.App. 6 Cir. 10/09/13), 128 So.3d 314, 318; Reed v. Columbia/HCA Info. Sys., 00-1884 (La.App. 5 Cir. 04/11/01), 786 So.2d 142, 146-47; Krepps v. Hindelang, 97-1034 (La.App. 5 Cir. 04/15/98), 713 So.2d 519, 526; Duncan v. Bartholomew, 11-0855 (La.App. 4 Cir. 03/14/12), 88 So.3d 698, 712. Further, the Fourth Circuit has recognized that excluding a witness from testifying for failure to comply with a pretrial order is a sanction within the trial court’s discretion. See Duncan, supra.
For example, in Krepps, supra at 527, this Court affirmed the district court’s conclusion disallowing the plaintiffs’ economic expert from testifying because the plaintiffs did not disclose the expert in interrogatories propounded by the defendants over two years before trial, did not indicate in their answers that an economic expert would be used at trial, did not supplement or amend their answers to those interrogatories, and disclosed the identity of the expert only in the pre-trial order shortly before the trial date. In ruling that the plaintiffs’ economic expert could not testify at trial, the district court stated: “[T]he listing of the witness in the pre-trial order which comes shortly before the actual trial does not meet the requirements of the local rules, nor does it meet the court’s own requirements with respect to trial preparation.” Id.
Here, Mr. Savoie’s counsel notified opposing counsel for the first time in this years-long litigation of his intention to call Mr. LaFleur and Mr. Beter on May 30, 2014, less than one month before trial and one day after the court-ordered discovery deadline. At the hearing on Mr. Guidry’s motion to strike, counsel for Mr. Savoie argued that Mr. Guidry had always been aware of the six witnesses. hfiAnd counsel for Mr. Guidry even acknowledged this: “Of course, we have heard of them.” Yet, being aware of witnesses who may have knowledge of discoverable matters is very different from first learning of an adverse party’s intention to call those witnesses within one month of trial after the close of years-long discovery. We agree with the district court that permitting these witnesses to testify after such an eleventh-hour disclosure would impose a “needless burden” on Mr. Guidry. And while it is true that Mr. Guidry’s May 30, 2014 disclosure to Mr. Savoie of his witness supplementation was also untimely, the record reflects that the two fact witnesses disclosed therein, Mr. Villarrubia and Mr. Besselman, had already been deposed by Mr. Savoie. Thus, the burden would not be equally felt by Mr. Savoie. This perhaps explains the fact that Mr. Guidry moved to strike, while Mr. Savoie did not.
We are. mindful this issue implicates the district court’s control of its docket and - case management. In these matters, trial courts are granted wide discretion, such that an appellate court’s interference should only be done with reluctance and in extreme cases. See Chambers-Johnson v. Applebee’s Rest., 12-98 (La.App. 5 Cir. 09/11/12), 101 So.3d 473, 477. We do not believe this is an extreme case warranting our interference.
On the record before us, we do not find that the district court abused its discretion *1195 in excluding the testimony of Oscar La-Fleur and Robert Beter. This assignment of error is without merit.
DECREE
For the foregoing reasons, the March 31, 2015 judgment of the district court is affirmed.

AFFIRMED.

/ RPC ultimately had to re-file its 2001 federal tax' return as a C-corporatio.n because it ■had failed to timely maleé the S-corporation election. The C-corporation return also re- *1189 fleets that Mr. Guidry held a 60-percent ownership interest in the company.

. As it turned out, Mr. Guidry did not call any of these witnesses at trial. Todd Villarrubia was called by Mr. Savoie.

. The one witness Mr. Guidry did not object to was Todd Villarrubia. As counsel explained at the hearing, he did not object tó Mr. Villarrubia because he had already been deposed.