STATE OF LOUISIANA IN THE INTEREST
OF M.W.

NO. 23-CA-4

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 18,805, DIVISION "B"
HONORABLE NGHANA LEWIS, JUDGE PRESIDING

May 23, 2023

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, Marc E. Johnson, Stephen J. Windhorst, and Cornelius E. Regan, Pro
Tempore

<u>**AFFIRMED**</u>
**MEJ**
**JGG**

<u>**CONCURS WITH REASONS**</u>
**FHW**

<u>**DISSENTS WITH REASONS**</u>
**SJW**
<u>**DISSENTS WITH REASONS**</u>
**CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR MINOR/APPELLANT,
M.W.
 Mary R. Mustaller McMillan

COUNSEL FOR DEFENDANT/APPELLEE,
M.D. (FATHER)
 Douglas L. Harville

**JOHNSON, J.**

M.W., the minor child, appeals the denial of the petition to terminate the parental rights of her biological father, M.D., rendered in the 40th Judicial District Court, Division "B".[1]  For the following reasons, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On February 10, 2021, an "Affidavit in Support of Instanter Order" was filed on behalf of the State of Louisiana, through the Department of Children and Family Services (hereinafter referred to as "DCFS"), alleging a report of alleged neglect and drug dependency of M.W., the minor child.  It was further alleged that, due to the ongoing issues with substance abuse, untreated mental illness, possible flight risks, and the diminished caretaker protective capacities of both of the biological parents, it was in the best interest of M.W. to be placed in the care of DCFS.  M.W. was ordered to be placed in the temporary custody of DCFS on the same date by the trial court,[2] and Southeast Louisiana Legal Services was appointed as M.W.'s counsel.  M.W. was 20 days old at the time the order was issued.  On May 18, 2021, the trial court adjudicated M.W. a child in need of care, and she continued to be in the custody of DCFS.

Pursuant to the child in need of care proceeding, DCFS formulated a case plan for M.D.  M.D.'s case plan required him to obtain and maintain housing that meets the basic needs of M.W. for, at least, six months; make a parental contribution of $25 per month while M.W. is in foster care; submit to substance abuse and mental health assessments and comply with the recommendations; submit to random drug screens; secure stable and legal employment; attend and

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5.2, the initials of the minor and family members will be used to protect the child's identity.  *See also*, *State in the Interest of E.I.R.*, 13-450 (La. App. 5 Cir. 11/19/13), 130 So.3d 360, 361 n.1.

[2] M.W. was placed under the foster care of M.D.'s relative, A.D., and his girlfriend, J.G., per the request of the biological mother, A.W.

participate in all Family Team meetings and court hearings; maintain a bond with M.W. by visiting her per the visitation contract; attend and successfully complete parenting classes; and participate in domestic violence counseling. The case plan was approved by the trial court and was found to be consistent with the safety of M.W. and in her best interest.

On June 30, 2022, DCFS filed a "Petition for Termination of Parental Rights."[3] In its petition, DCFS asserted that M.D.'s parental rights should be terminated pursuant to La. Ch.C. art. 1015(5)(b) and (c) and 1015(6). It alleged that M.D. had abandoned M.W. by placing her in the physical custody of the department; failing to provide significant contributions to M.W.'s support and care for a period of six consecutive months; failing to complete his case plan or maintain contact with M.W. through DCFS; and demonstrating a complete lack of interest in the possibility of having M.W. returned to his custody. It also alleged that there is no reasonable expectation of significant improvement in M.W.'s condition or conduct in the near future. DCFS sought the termination of the parental rights for the purpose of certifying M.W. as free and eligible for adoption.

The matter was heard on November 2, 2022. Only one witness, Amanda Armant, testified before the trial court. After considering the evidence presented, the trial court denied DCFS's petition to terminate parental rights. The trial judge found that she could not terminate the parental rights of the struggling parents at that time. She further found that the evidence was insufficient to conclude that M.D. could not be in M.W.'s life with sustained support and services to achieve reunification. The trial judge did not think that termination of the parental rights was in the best interest of M.W.

The trial court rendered a written judgment on November 17, 2022, denying

---

[3] DCFS sought the termination of the parental rights of M.D. and A.W., M.W's biological parents.

DCFS's petition to terminate parental rights. The trial court then ordered that M.W. remain in the custody of DCFS and DCFS develop and implement a case plan that provides more reasonable expectations and resource options in support of reunification between M.W. and her biological parents. The instant appeal followed.[4]

## ASSIGNMENTS OF ERROR

On appeal, M.W. alleges that the trial court erred by: 1) denying the petition for the involuntary termination of the parental rights of M.D., despite the presentation of uncontradicted evidence of, at least, one ground for the termination; and 2) considering the parental rights of M.D. to be more important than her rights.

## LAW AND ANALYSIS

Denial of Petition to Terminate Parental Rights

M.W. alleges the trial court manifestly erred in disregarding uncontradicted evidence that she has been legally abandoned by her biological father, M.D., and finding that termination of his rights would not be in her best interest. She argues that M.D. has never provided contributions to her care, in compliance with La. Ch.C. art. 1015(5)(b). She further argues that M.D. only visited with her only twice prior to the time of trial, evidencing that he was in violation of La. Ch.C. art. 1015(5)(c).

Additionally, M.W. argues that M.D. lacked proof of compliance with his trial court-approved case plan in nearly every way, violating La. Ch.C. art. 1015(6). She contends that M.D. had not attended his scheduled visitations with her; failed to communicate with her; failed to keep DCFS apprised of his whereabouts; failed to contribute to the costs of her care; failed to comply with the

---

[4] Both DCFS and M.W. appealed the trial court's denial of the petition to terminate the parental rights of both M.D. and A.W. However, DCFS's appeal was dismissed by this Court on March 16, 2023, pursuant to Uniform Rules—Courts of Appeal, Rule 5-3(C)(2). Following a motion to dismiss filed by the mother, A.W., M.W.'s appeal against A.W. was dismissed on March 31, 2023. Accordingly, only the denial of the termination of M.D.'s parental rights is before this Court for review.

programs of treatment (addressing mental health, substance abuse, parenting and domestic violence concerns) provided in his case plans; and failed to redress the problems which placed her into DCFS's custody. M.W. asserts that the violations of La. Ch.C. art. 1015(5)(b) and (c) and La. Ch.C. art. 1015(6) were sufficient termination grounds to move to the best interest of the child inquiry.

When considering the best interest of the child inquiry, M.W. argues that it is in her best interest that M.D.'s parental rights be terminated and she be freed for adoption by her foster parents. She contends that, at the time of trial, she had been in the custody of DCFS for 22 months and M.D. had not made any substantial progress toward completion of his case plans; thus, there is no evidence of any hope of reuniting her with M.D. at any point. M.W. asserts that she deserves the permanence of being formally adopted by her foster parents, rather than wondering whether her biological father will ever make himself available to her.

M.D. avers that the trial court did not manifestly err by finding DCFS failed to carry its substantial burden of proof required to support the termination of his parental rights, and finding that terminating his parental rights was not in M.W.'s best interest. He maintains there was no evidence presented that his failure to pay any support for M.W. was intentional and knowing, or that the six months of non-support indicated his intent to abandon M.W., and was not the result of poverty or the inability to pay. He further maintains that his failure to visit with M.W. due to the jail's policies was not a sufficient ground to terminate his parental rights. He also maintains that his failure to comply with the case plan was not a sufficient ground to terminate his parental rights. M.D. asserts that DCFS had an obligation to make reasonable efforts to reunite him with M.W. prior to resorting to termination of his parental rights, pursuant to La. Ch.C. art. 626(B), and the trial court correctly found that DCFS did not undertake reasonable efforts to assist him.

At the trial, Ms. Armant, DCFS's case worker for the family, was the only

person to testify in the matter. Ms. Armant testified regarding M.D.'s case plan to acheive reunification with M.W. and his subsequent non-compliance with the plan. She stated that, to her knowledge, M.D. had been in jail twice since the inception of the case, and M.D. had only seen M.W. twice: one visit at the beginning of the case and one visit near the date of the trial. While incarcerated, Ms. Armant testified that M.D. was expected to complete the parenting classes portion of his case plan only to the extent the jails provided the classes; however, she was not sure which classes, if any, were available to help M.D. Ms. Armant stated that M.D. did not make himself available for drug screens, but she was unsure if the jails offered random drug screenings. Although there were no drug screenings performed on M.D., Ms. Armant testified that she was aware of two overdosing incidences involving M.D. through information given to her from his mother and the previous DCFS worker. In reference to visitations while a parent is incarcerated, Ms. Armant believed that children were not allowed by DCFS to visit with a parent in jail due to the environment. According to Ms. Armant, the jails limited visits via Zoom.

To Ms. Armant's knowledge, M.D. had not contributed any monthly monetary payments or contributed anything to the care of M.W. When asked if M.D. would be able to complete all or part of his case plan if given more time, Ms. Armant responded, "No." She stated it was DCFS's position that adoption was in the best interest of M.W. She also stated that, at the beginning of the year, M.D. expressed a desire to surrender his parental rights, but he did not start the process.

La. Ch.C. art. 1015 provides the following grounds for the termination of parental rights, in pertinent part:

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

While parents have a constitutionally protected liberty interest in establishing and maintaining a meaningful relationship with their children, the State has a legitimate interest in limiting or terminating parental rights under certain conditions. *State in Interest of J.R.*, 11-351 (La. App. 5 Cir. 12/13/11), 84 So.3d 623, 628. The State only needs to establish one ground under La. Ch.C. art. 1015 upon which to base the termination of parental rights, and it must prove those elements by clear and convincing evidence. *State in Interest of A.M.C.*, 16-615 (La. App. 5 Cir. 2/8/17), 210 So.3d 946, 954. Under the "clear and convincing" standard, the existence of the disputed fact must be highly probable or much more probable than its nonexistence. *State in Interest of H.M.R.*, 22-176 (La. App. 5 Cir. 1/11/23), 356 So.3d 1179, 1183, citing *State in Interest of A.L.D.*, 18-1271 (La. 1/30/19), 263 So.3d 860, 863. In addition, the trial judge must also find that the termination is in the best interest of the child. *State in Interest of A.M.C.*, *supra*, citing *State ex rel. J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 860, 863; La. Ch.C. art. 1037.

The appellate courts review a trial court's findings as to whether parental rights should be terminated according to the manifest error standard of review. *Id.*,

citing *State ex rel. K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759, 762. Under this standard of review, an appellate court's task is not to determine whether the factfinder was right or wrong, but whether the factfinder's conclusion was reasonable. *State in Interest of H.M.R.*, 356 So.3d at 1183-84. If the conclusion is reasonable in light of the record viewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Guidry v. Savoie*, 15-809 (La. App. 5 Cir. 5/26/16), 194 So.3d 1184, 1192, *writ denied*, 16-1218 (La. 10/17/16), 207 So.3d 1064, citing *Neathamer v. Singleton*, 15-411 (La. App. 5 Cir. 12/23/15), 182 So.3d 406, 410.

In its judgment, the trial court recognized that there have been many challenges throughout the case in regards to M.D. working the case plan and communicating with his case worker. The court stated it was not convinced that DCFS proved by clear and convincing evidence that the parental rights of either parent should have been terminated. It found that DCFS had not made reasonable efforts—with M.W.'s health and safety as the paramount concern—to set in motion good faith efforts to reunify M.W. with her parents through a permanency plan that fostered M.W.'s best interest and had reunification as an earnest, reasonable goal.

The court further found that DCFS essentially focused its reasons to maintain M.W. in its custody on the undisputed fact of the parents' drug use; yet, DCFS failed to acknowledge any responsibility it had to use its resources to provide the parents with substantial assistance to reunify them with M.W. The trial court reasoned that the testimony of Ms. Armant led it to believe that there are serious communication issues between DCFS and the parents. It stated that the evidence, testimony, and arguments by DCFS were all in accordance with the case goal of adoption with no efforts to reunify M.W. with her parents, specifically

M.D.  The court held that the evidence conflicted with DCFS's argument, and DCFS had not considered the circumstances surrounding M.D.'s noncompliance with the case plan.  The court then found that M.D. had shown an interest in being a part of M.W.'s life, which was evidenced by his most recent visit with M.W.

The trial court reasoned there was no evidence presented directly from either of the biological parents expressing their desires to surrender their rights and have M.W. adopted.  Additionally, the court stated there was no evidence presented directly from the foster parents expressing their desires to adopt M.W.

The trial court also found that a child whose parents are unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, have their rights terminated.  The court found that M.W.'s parents can be in her life with support and services in place.  It reasoned that M.W. was one year old; A.W. and M.D. had a trusting and open relationship with the foster parents; and there was ample time for reunification to occur with sufficient and consistent support services in place.  The trial court then ordered DCFS to develop and implement a case plan that provides more reasonable expectations and resource options in support of reunification between M.W. and her biological parents.

After reviewing the record, we cannot find that the trial court's factual findings were manifestly erroneous or clearly wrong.  The court acknowledged the struggles M.D. has had with complying with his case plan and the communication issues between M.D. and DCFS.  However, the trial court ultimately found it was not in the best interest of M.W. to terminate M.D.'s parental rights at that time.  The evidence presented supports the trial court's conclusions.  Therefore, we affirm the trial court's judgment denying DCFS's petition to terminate the parental rights of M.D.

M.W. alleges that the trial court committed a legal error by considering the parental rights of M.D. to be paramount to her rights as a child in its decision to not terminate M.D.'s rights.  She argues that, while the trial court acknowledged the fundamental liberty interests of parents, it erred in failing to acknowledge that the child's rights to permanence and stability are superior and paramount to the rights of biological parents who cannot or chose not to provide that stability.  M.W. contends that the trial judge's reference to "the paramount rights of the parents" shows that the trial judge openly refused to keep her interest in stability and permanence at the focus of the deliberations.

M.D. avers that the trial court properly considered M.W.'s rights as a child and found DCFS failed to prove that his and A.W.'s parental rights should be terminated by clear and convincing evidence.  He maintains that M.W.'s focus on the trial judge's reference to his and A.W.'s paramount parental interests is misguided, and the reference was nothing more than a contextual citation of the paramount parental rights stated in La. Ch.C. art. 101.  As such, M.D. asserts that the trial court did not commit a legal error when it used the term "paramount" in its ruling.  We agree.

In its written judgment, the trial court cites to the preamble of the Louisiana Children's Code and quotes, "'parents have the paramount right to raise their children in accordance with their own values and traditions… .'"  It is clear from the context of the judgment that the trial court only used the parents' "paramount right" in reference to the preamble, and it based its actual findings on the evidence presented in consideration of La. Ch.C. art. 1015(5)(b) and (c) and La. Ch.C. art. 1015(6).  Therefore, we find that the trial court did not commit a legal error when referencing "paramount" parental rights.

**DECREE**

For the foregoing reasons, we affirm the judgment of the trial court that denied the petition to terminate the parental rights of M.W.'s biological father, M.D.

**<u>AFFIRMED</u>**

STATE OF LOUISIANA IN THE
INTEREST OF M.W.

NO. 23-CA-4

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

## WICKER, J., CONCURS WITH REASONS

I concur in the majority opinion affirming the trial court's denial of DCFS's petition to terminate parental rights in this case based on the lack of evidence presented only through Ms. Armant's testimony concerning the foster parents' desire and ability to adopt and DCFS's efforts toward the biological parents' rehabilitation and reunification with M.W.

However, I write separately to further point out the complications that arise in this particular case in light of the fact that the proposed adoptive parents are not married. Although the majority opinion and the parties in this case reference that the "foster parents" desire to adopt M.W., the record reflects that, at this time, both foster parents are not legally able to jointly adopt M.W. Rather, Ms. Armant testified that "since they are not married [,] [A.D.] is the only one that is going to be able to adopt her [M.W.] at the moment."

Because A.D. is the only person certified to adopt M.W., he would have sole custody of M.W. following adoption. The other foster parent, J.G., would be considered a non-parent under Louisiana law following M.W.'s adoption. Therefore, should A.D. and J.G. end their dating relationship, J.G., who has cared for M.W. since infancy, as a non-parent would not be entitled to share custody under Louisiana law without first proving that "substantial harm" to M.W. would result if A.D.—who has a biological connection to the child and an extended family biologically related to the child—maintained sole custody. It is unclear at this time how those circumstances may affect a permanency analysis for M.W.'s

adoption. See La. C.C. art. 133; La. Ch.C. art. 1198; *Tracie F. v. Francisco D.*, 15-1812 (La. 3/15/16), 188 So. 3d 231, 237; *Ferrand v. Ferrand*, 18-618 (La. App. 5 Cir. 12/6/19), 287 So.3d 150, 161, *writ denied*, 20-0138 (La. 3/9/20), 291 So.3d 216. Although this issue raises some concern, it is not dispositive in this appeal. Accordingly, I concur in the majority opinion that, based on the evidence presented, the trial judge was not manifestly erroneous in her denial of DCFS's petition to terminate.

STATE OF LOUISIANA IN THE                    NO. 23-CA-4
INTEREST OF M.W.

                                             FIFTH CIRCUIT

                                             COURT OF APPEAL

                                             STATE OF LOUISIANA


**WINDHORST, J., DISSENTS WITH REASONS**

I respectfully disagree with the majority opinion to affirm the trial court's

denial of the petition to terminate the father's parental rights in this matter. I would

reverse the trial court's judgment and terminate the father's parental rights in this

case for the following reasons.

La. Ch.C. art. 1015 (5) and (6) provide grounds for involuntary termination:

> (5) Abandonment of the child by placing him in the physical custody
> of a nonparent, or the department, or by otherwise leaving him under
> circumstances demonstrating an intention to permanently avoid
> parental responsibility by any of the following:
>
> *    *    *
>
> (b) As of the time the petition is filed, the parent has failed to provide
> significant contributions to the child's care and support for any
> period of six consecutive months.
>
> (c) As of the time the petition is filed, the parent has failed to
> maintain significant contact with the child by visiting him or
> communicating with him for any period of six consecutive months.
>
> (6) Unless sooner permitted by the court, at least one year has elapsed
> since a child was removed from the parent's custody pursuant to a
> court order; there has been no substantial parental compliance with a
> case plan for services which has been previously filed by the
> department and approved by the court as necessary for the safe return
> of the child; and despite earlier intervention, there is no reasonable
> expectation of significant improvement in the parent's condition or
> conduct in the near future, considering the child's age and his need
> for a safe, stable, and permanent home.

For the reasons which follow, I believe the Department's petition for

termination should have been granted, and the father's parental rights terminated.

These reasons are supported by the uncontradicted testimony of the case worker,

three exhibits, and the record of the CINC proceeding, of which the trial court took judicial notice pursuant to La. Ch.C. art. 1036.1 B.

First, the child's father never provided contributions to the child's care over the entire history of the case, well in excess of six consecutive months, a ground for termination under La. Ch.C. art. 1015(5)(b). Ms. Amanda Armant, the DCFS case worker on this case, testified that the father never paid the $25 per month required by the case plan, contributed to the child's care, or sent any gifts to the child.

Second, by the time of the trial, the father had only seen the child twice in her life: once in March 2021 in DCFS's office, and once over a year later at his mother's home shortly before the termination trial (apparently unintentionally). He did not call the child, communicate with DCFS regarding the child, or inquire about the child's progress. Thus, the father failed to maintain significant contact for well over six consecutive months, a ground for termination under La. Ch.C. art. 1015(5)(c).

Third, the record supports a finding that the father's parental rights should be terminated under La. Ch.C. art. 1015 (6) because the father failed to substantially comply with the case plan established by DCFS; there is no reasonable expectation of significant improvement in his conduct in the near future; and it is in the best interest of the child to terminate his parental rights. In fact, the father is in favor of the DCFS case plan, termination, and ultimate adoption by the cousin.

La. Ch.C. art. 1036 C and D set forth the methods for proving the lack of parental compliance and lack of any reasonable expectation of significant improvement in the parent's conduct in the near future. Lack of parental compliance with the case plan is established by the father's failure to visit the child; his failure to communicate with the child; his failure to keep DCFS apprised of his whereabouts or any significant changes affecting his ability to comply with the case plan; his failure to contribute to the costs of the child's care, as ordered by the court; and his failure to make substantial improvement in rectifying the problems preventing

reunification. The court took judicial notice of the child in need of care record pursuant to La. Ch.C. art. 1036.1, which contains documentation relative to these facts.

The record also indicates that there is a lack of any reasonable expectation of significant improvement in the father's conduct in the near future. The father was incarcerated during most of these proceedings. The father has not made efforts towards complying with the case plan, maintaining contact with the child or DCFS, or provided any support for the child. The father failed to show up for drug testing to establish that he was no longer abusing drugs. The case worker testified that the father indicated he had no objection to moving the case plan towards adoption, that he wants to surrender his parental rights, and that he wants the child to remain with his cousin.

Finally, the record indicates that it is in the child's best interest to terminate parental rights. The interests of the parent must be balanced against the child's interest, but the child's interest is paramount. State In Interest of C.F., 17-1054 (La. 12/6/17), 235 So.3d 1066, 1075. A child has an interest in the termination of rights that prevent adoption and inhibit the child's establishment of secure, stable, long term, continuous family relationships. Id. While the interest of a parent is protected in a termination proceeding by enforcing procedural rules enacted to insure that the parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount interest of the child. Id. Children have a right to live in a safe, secure environment and to be reared by someone who is capable of caring for them. State ex rel. J.M., 02-2089 (La. 1/28/03), 837 So.2d 1247.

The facts of this case indicate that it would be in the best interests of the child to terminate the father's parental rights. The father has indicated that he would like the child to remain with his cousin and for his cousin to adopt the child. The father has not shown in interest in the child, in maintaining his parental rights, or in

attempting to comply with the case plan. Therefore, I believe it is in the best interest of the child to terminate his parental rights so that the child can move towards establishing a safe, secure, and permanent home.

There was no evidence whatsoever to contradict or to cast any doubt upon the evidence in support of the grounds for termination, or to show or to even suggest that termination and the DCFS's case plan is not in the best interest of this child. Indeed, on February 8, 2022, the trial court found that it was in the best interest of the child that the case plan be modified to move towards adoption.

Considering the foregoing and the lack of any contradictory evidence or argument in opposition, I believe trial court was manifestly erroneous and clearly wrong in concluding that the State failed to prove by clear and convincing evidence that the father's parental rights should be terminated, and that termination was not in the best interest of the child.

STATE OF LOUISIANA IN THE INTEREST OF M.W.

NO. 23-CA-4

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**REGAN, J., DISSENTS WITH REASONS**

I have considered the position of the majority, and I respectfully disagree. In my view, the trial court erred by denying the petition to terminate the parental rights of M.W.'s father, M.D.

The record shows that DCFS proved at least two grounds for termination of M.D.'s parental rights pursuant to La. Ch.C. art. 1015. Pursuant to La. Ch.C. art. 1015(5)(b), DCFS showed that M.D. failed to contribute to M.W.'s support for over six months. Although M.D. was in jail at times during the proceedings, he was not in jail the entire time and the record does not show that he was unable to contribute financially to her care at all. A parent may not have his rights terminated solely for failing to provide support, if this failure is due to inadequate financial resources. *See State v. A.T.*, 06-501 (La. 7/6/06), 939 So.2d 79, 86. However, the record does not show this was the reason for his failure to provide any support from the time of her birth to the termination hearing.

Pursuant to La. Ch.C. art. 1015(5)(c), DCFS also showed that M.D. failed to maintain significant contact with M.W. by visiting her or communicating with her for over six months. M.W. was born drug-affected on January 21, 2021. After release from the hospital, she was placed in the foster home of M.D.'s cousin. M.D. visited with M.W. once at the DCFS office on March 3, 2021. Shortly thereafter, DCFS provided M.D. with a case plan, which set forth several requirements for M.D. to complete, including that he maintain a bond with M.W. by visiting her per the schedule. However, the record does not show that he made

any effort to visit M.W. or complete his case plan. In fact, Amanda Armant, the DCFS caseworker, reported that in November of 2021, she met with both parents and they expressed an interest in terminating their parental rights and having M.W. adopted by her foster parents.

In addition to proving the termination grounds set forth in La. Ch.C. art. 1015(5)(b) and (c), I believe DCFS proved the grounds for termination set forth in La. Ch.C. art. 1015(6). La. Ch.C. art. 1015(6) provides that parental rights may be terminated when: 1) the child has been removed from the parent's custody for at least one year; 2) there has been no substantial compliance with a case plan; and 3) "there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and her need for a safe, stable, and permanent home."

Clearly, M.W. was not in M.D.'s custody for at least a year, because she has never been in his custody. The record shows M.D. failed to comply with his case plan, and Ms. Armant testified that even if the parents were given more time to complete the case plan, she did not believe either parent would be willing or able to do so in the foreseeable future.

The testimony revealed that M.D. had only seen M.W. twice in her lifetime. He saw her at the DCFS office in March of 2021 and then in October of 2022. According to Ms. Armant, the second visit occurred when the foster parent, M.D.'s cousin, brought M.W. to his aunt's house (M.D.'s mother) and M.D. was at the home at that time. In her reasons for judgment, the trial judge found it important that M.D. had recently visited with M.W. However, the record does not show that M.D. intended or planned to visit with M.W., or that M.D. made any effort to visit M.W.

In February of 2022, the trial court approved the case plan goal of adoption, finding it in M.W.'s best interest. However, in her reasons for judgment, the trial

court found that DCFS had not made reasonable, good faith efforts to reunify M.W. with her parents and to provide a permanency plan that "has reunification as an earnest, reasonable goal."

I believe that in order to reunify a parent with child, there must be some cooperation or effort by the parent, which has not been shown here. According to Ms. Armant, M.D.'s mother indicated that M.D. was living with her, was receiving his mail/court notices, and was aware of the hearing, but M.D. did not appear at the termination hearing. Further, Ms. Armant testified that M.D. has not contacted her regarding his case plan, has not completed any of it, and "has not really made himself available." The record does not show that M.D. has made an effort to have a relationship with M.W.

M.W. is a young child who deserves a safe, stable, and permanent home. There is no evidence to suggest that M.D. will be willing or able to provide such a home for M.W. in the near future. I believe it is in the best interest of M.W. to terminate M.D.'s parental rights. Accordingly, I would reverse the trial court's judgment and order termination of M.D.'s parental rights.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 23, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

*Curtis B. Pursell*

**CURTIS B. PURSELL**
CLERK OF COURT

# 23-CA-4

**E-NOTIFIED**

40TH DISTRICT COURT (CLERK)
HONORABLE NGHANA LEWIS (DISTRICT JUDGE)
BENJAMIN MCDONALD (APPELLEE)
DOUGLAS L. HARVILLE (APPELLEE)

MARY R. MUSTALLER MCMILLAN
(APPELLANT)

ANNETTE F. ROACH (APPELLEE)

**MAILED**

NICHOLAS ROSZCYNIALSKI (APPELLEE)
ATTORNEY AT LAW
113 OIL CENTER DRIVE
LAFAYETTE, LA 70503

VENESE M. MORGAN (APPELLEE)
ATTORNEY AT LAW
412 NORTH 4TH STREET
SUITE 102
BATON ROUGE, LA 70802